**Julio CAMPUZANO and Joy Campuzano, Plaintiffs,**

v.

**Chea Hung KIM, Defendant/Third–Party Plaintiff,**

v.

**UNITED STATES of America, Third–Party Defendant.**

**No. CV–89–1135.**

United States District Court, E.D. New York.

Oct. 8, 1990.

Kanterman Taub & Breitner, P.C., New York City, for Julio Campuzano and Joy Campuzano.

Waxman Miller & Trautwig, Great Neck, N.Y., for Chea Hung Kim.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Christopher Lehmann, Special Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

SIFTON, District Judge.

This is a motion to dismiss for failure to state a claim upon which relief can be granted brought, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, by third-party defendant United States of America. Both third-party plaintiff Kim and plaintiffs Julio and Joy Campuzano have submitted papers in opposition to the motion.

For purposes of this motion, the relevant facts are essentially undisputed. In October 1987, plaintiff Julio Campuzano was a New York City police officer who had taken temporary assignment to the Federal Bureau of Investigation's "Terrorist Taskforce." Along with another New York City employee, Derek Dottin, and pursuant to that assignment Mr. Campuzano was

designated and sworn as a Special Deputy United States Marshal and, hence, became, for all practical purposes, a federal employee.

On October 28, 1987, Mr. Campuzano was involved in an automobile accident in Bayonne, New Jersey, when the car in which he was riding, which was being operated by Dottin, allegedly swerved to avoid an automobile driven by defendant/third-party plaintiff Kim. At the time of the accident, Campuzano and Dottin were returning to New York from a day of Taskforce surveillance in Jersey City, New Jersey. As such, the two were acting within the scope of their employment by the federal government. Plaintiff and defendant/third-party plaintiff are all New York residents. New Jersey's relationship with the case is limited to the fact that it was the situs of the accident.

Notwithstanding his status as a federal employee injured while acting within the scope of federal employment, Mr. Campuzano did not seek compensation for his injuries under the Federal Employees Compensation Act (FECA), the federal worker's compensation analogue. Rather, Mr. Campuzano sought and received remuneration for his medical expenses from New York City's Worker's Compensation Insurance Fund.

Sometime thereafter, plaintiff Campuzano brought suit against Mr. Kim in New York State Supreme Court. In response, defendant Kim brought a third-party suit for indemnification and contribution against Dottin, who then removed the action to this Court under 28 U.S.C. § 2671 since he was, at the time of the accident, a federal employee acting within the scope of his employment under 28 U.S.C. § 2671. Ultimately, Mr. Kim dropped his individual claim against Dottin and, by amended complaint, commenced a third-party suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq. That suit, seeking indemnification and contribution for any damages Kim is required to pay Campuzano, is the subject of the current motion.

The United States seeks dismissal of the third-party complaint against it on the ground that the law applicable to Mr. Kim's claim is the law of the State of New Jersey and that New Jersey law bars claims of the sort made here against the United States.

## DISCUSSION

■ Section 1346(b) of the FTCA provides that the district court shall have exclusive jurisdiction over claims against the government for civil damages "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Since the accident occurred in New Jersey and any negligent act or omission would have occurred there, the plain language of the statute directs that this Court apply New Jersey law.

■ As a matter of statutory interpretation, it is not altogether clear on the face of the statute whether Section 1346(b)'s reference to "the law of the place where the act or omission occurred" denotes the *internal* law of that place, i.e. the substantive law, or the *"whole"* law of that place, i.e. the law including that state's conflicts rules. However, in a case quite similar to the one at bar, *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), the Supreme Court concluded that "reading the statute as a whole, with due regard to its purpose, requires application of the whole law of the State where the act or omission occurred." *Id.* at 11, 82 S.Ct. at 592. The Court in *Richards* reasoned that, in cases which involve "events touching more than one 'place,' a problem which Congress apparently did not explicitly consider," *id.* at 9, 82 S.Ct. at 591, the Congressional intent, to the extent that there was one, was "not ... to set the [federal] courts completely adrift from state law." *Id.* at 11, 82 S.Ct. at 592. Rather, federal courts facing this issue must behave as the relevant state court would, applying that state's conflicts of laws rules in order to determine whose substantive law will govern. *See Kohn v.*

*United States,* 591 F.Supp. 568, 572 (E.D. N.Y.), *aff'd,* 760 F.2d 253 (2d Cir.1985).

■ Were this Court simply to apply New Jersey internal law, we would likely be compelled to dismiss the action against the United States. Under *Ramos v. Browning Ferris Industries of South Jersey, Inc.,* 103 N.J. 177, 510 A.2d 1152 (1986), third-party suits against plaintiff's employer are barred on the theory that the *quid pro quo* for an employer's participation in New Jersey's workers compensation scheme is protection from tort liability, direct or indirect. New Jersey has decided that permitting third-party suits to go forward against employers undermines the "bargain" upon which workers compensation is based, although the fact that the plaintiff in this case did not receive compensation under either New Jersey workers compensation or under FECA substantially weakens the nexus between the elements of the *quid pro quo* on these facts.

■ In contrast to the law of New Jersey, under New York law suits by a third party for contributions from an employer are permitted to go forward. *See Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972). Accordingly, the resolution of the New Jersey conflicts issue is at the heart of this motion.

■ In keeping with the modern trend, New Jersey has adopted the governmental interest test for choice of law issues. *See Mellk v. Sarahson,* 49 N.J. 226, 229 A.2d 625 (1967). Under that test, courts must analyze the policies which support each of the two conflicting rules and then determine, in light of those policies and the relevant facts, which state has the greater interest in having its law applied. New Jersey has affirmed this approach in a workers compensation case as recently as

1988, in *Eger v. E.I. Du Pont DeNemours Co.,* 110 N.J. 133, 539 A.2d 1213 (1988).[1]

In *Eger,* plaintiff was a New Jersey resident, employed by a New Jersey firm, injured while working as a subcontractor in South Carolina. The plaintiff sought compensation under New Jersey's workers compensation law, then instituted a third-party tort action against the general contractor of the job, the South Carolina firm of Du Pont. 539 A.2d at 1214. Du Pont moved for summary judgment on the ground that South Carolina's workers compensation law prohibits tort actions against general contractors since they participate in that state's workers compensation scheme. New Jersey law does not force general contractors to participate in its workers compensation scheme, and, thus, it permits tort actions against them. 539 A.2d at 1213.

On these facts, the New Jersey Supreme Court was faced with a "true conflict." Friedell, "Interest Analysis in New Jersey," 21 Rutger's L.J. 67, 82 (1989). On the one hand, South Carolina had an interest in shielding its employer from tort liability because that employer had consciously subscribed to the *quid pro quo* of payment into the compensation fund in exchange for no tort liability. New Jersey, on the other hand, had an interest in insuring that its resident, the plaintiff, recover as fully as possible under New Jersey law. Ultimately, the Supreme Court of New Jersey held that the plaintiff was barred under South Carolina law from pursuing his cause of action against Du Pont.

The court in *Eger* described the nature of South Carolina's interest in having its law applied as follows. It spoke of that state's interest in "protecting the welfare of persons working within its borders, affixing responsibility for that protection, regulating the safety of the workplace, and allo-

---

1. At oral argument and in its brief, the government suggests that the *Eger* decision is a step towards "certainty of result" in choice of law cases, as opposed to government interest analysis. For support, it relies on an analysis of the *Eger* decision in the Rutger's Law Journal. Friedell, "Interest Analysis in New Jersey," 21 Rutger's Law Journal 62, 82 (1989). In that

article, Professor Friedell argues that *Eger* implies that the New Jersey Supreme Court will default to the law of the place of the tort in cases where the interests of both states are equally balanced. *Id.* Be that as it may, as discussed below, the interests of New York and New Jersey are clearly not equally balanced in this case.

cating the financial costs resulting from employment accidents." 539 A.2d at 1217. Moreover, it spoke of a " 'system of give and take [which] would be upset if the employee could sue for negligence in another jurisdiction.' " *Id.* (quoting *Jonathan Woodner Co. v. Mather*, 210 F.2d 868, 873–74 (D.C.Cir.1954), *cert. denied*, 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 650 (1954)). These interests the court set off against the interests of New Jersey in granting one of its residents a greater recovery than that which he had already received under workers compensation and in permitting the plaintiff's direct employer (the subcontractor) to be reimbursed. *Eger*, 539 A.2d at 1218.

The government argues that this language indicates that, since the same interests exist in this case involving New York and New Jersey as existed between New Jersey and South Carolina in *Eger*, the same result should follow, namely, that the law of the place of the accident should apply. The argument ignores the fact that the same general policies may be implicated in different ways in different cases, and the different factual situations require different results. In this case, New Jersey's policies reflected in its workers compensation scheme will not be affected one bit by the application here of New York law. While New York has a substantial interest in furthering the policies of its workers compensation scheme on these facts, the third-party defendant is not a New Jersey resident who has conscientiously upheld its side of the "bargain" by paying into New Jersey's workers compensation fund. Thus, the integrity of the workers compensation *quid pro quo* in New Jersey is not at risk, as it may have been *vis-à-vis* South Carolina in *Eger*.

Furthermore, since the plaintiff is not a New Jersey resident, New Jersey has no interest in limiting the extent to which the plaintiff recovers. The plaintiff did not assert a claim under New Jersey workers compensation, thus the risk of "double-dipping" as to New Jersey—i.e., seeking a cash award under the compensation fund directly, then a further award indirectly by way of a third-party action—is non-exis-

tent. Moreover, no suggestion has been made that New Jersey has a policy of generally minimizing recovery by out-of-state drivers to keep them out of the state. In sum, New Jersey's only connection with this case is itself fortuitous: it happens to have been the place where the accident occurred.

New Jersey's lack of interest is in contrast to the interest of New York in this case. Here, the plaintiff, the defendant, and, for purposes of this analysis, the third-party defendant are all New York "residents." New York has struck a fundamentally different balance in terms of avenues available for its plaintiffs to recover and has rejected the argument that third-party recoveries against its employers will undermine its workers compensation system. Both of these policy choices are implicated by the facts of this case. The New York plaintiff has asserted his claim under New York workers compensation, and the third-party defendant, the U.S. Government, operating out of New York, cannot reasonably claim any right to protection from New Jersey's exclusivity-of-remedies provision, since protecting the government in this case would further no interest of New Jersey.

For the reasons stated above, the third-party defendant's motion to dismiss is denied.

SO ORDERED.