**Dennis SNYDER, Johnny Gonzales, Jose Borja and Steve Dobis, Plaintiffs,**

v.

**CELSIUS ENERGY COMPANY, a Nevada corporation, and Universal Resources Corporation, a Texas corporation, Defendants.**

No. 92–C–806J.

United States District Court,
D. Utah,
Central Division.

Jan. 10, 1994.

---

W. Brent Wilcox, Wilcox, Dewsnup & King, Salt Lake City, UT, for plaintiffs.

Gordon L. Roberts, David W. Zimmerman, Parsons, Behle & Latimer, Salt Lake City, UT, for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, District Judge.

Plaintiffs, New Mexico residents, were employed by WellTech, Inc., a New Mexico well service company, to work on Cutthroat Unit No. 1, an oil well located in Montezuma County, Colorado. On September 1, 1991, while plaintiffs were in the process of removing production casing from the well, a fire erupted, injuring the plaintiffs. Plaintiffs

brought the above-captioned action, alleging negligence on the part of Defendant Celsius Energy Company ("Celsius"), operator of the Cutthroat Unit.

Celsius has moved for summary judgment on the ground that plaintiffs' tort claims, arising out of injuries suffered at the Cutthroat Unit No. 1 well site in Colorado, are barred as a matter of law by the exclusive remedy provisions of the Colorado Workers' Compensation Act. Those provisions reflect a public policy renouncing common-law tort liability involving employees and employers. *See* Colo.Rev.Stat. § 8–40–102 (Supp.1992).[1]

Plaintiffs argue that the Colorado statute does not operate to bar their claims because (1) the plaintiffs have filed for workers' compensation benefits in New Mexico, invoking the pertinent provisions of New Mexico law; (2) enforcement of Colorado's exclusive remedy provisions would run contrary to Utah public policy; and (3) that under the *Restatement (Second)*'s "most significant relationship" test, New Mexico has a greater interest in the ability of New Mexico domiciliaries to obtain full compensation for injuries than Colorado has in insulating those who contract for the services of others to be performed in Colorado against tort liability. *See* Memorandum in Opposition to Defendant's Motion for Summary Judgment, dated December 14, 1992 (dkt. no. 17) ("Pltfs' Opp. Mem.")

Celsius asserts that "the prevailing choice of law rule" would enforce the exclusive remedy provisions of the state workers' compensation statute which (1) requires the defendant (or the defendant's subcontractor) to insure against the particular risk involved and (2) under which the plaintiff may obtain an award. *See* Celsius' Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (dkt. no. 6) ("Celsius Mem."), dated October 23, 1992, at 17 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 184 (1971)). Celsius suggests that the Colorado Workers' Com-

1. Section 8–40–102 reads:
It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to

employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

**1352**

pensation Act satisfies both of these particulars and moreover, that, because of Celsius' lack of contacts with New Mexico, application of New Mexico law to Celsius would deny due process of law.[2] *See* Reply Memorandum of Points and Authorities in Support of Defendant Celsius Energy Company's Motion for Summary Judgment, dated January 20, 1993 (dkt. no. 34) ("Celsius Reply Mem.") at 15–16.

Celsius' motion for summary judgment was heard before this Court on February 4, 1993.[3] On February 17, 1993, plaintiffs filed a Supplemental Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, and on March 17, 1993, the Court entered an Order granting Celsius' motion to strike Exhibit 9 to plaintiffs' opposition memorandum.[4] Since then, the motion has remained under advisement.

## I. APPLICABLE CHOICE OF LAW RULES

 A federal court sitting in diversity must apply the conflicts of law rules of the state in which it sits. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215, 217 (10th Cir.1992); *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 888 (10th Cir.

1991). Thus Utah law would apply to determine the choice of law issues arising from Celsius' motion. As the court of appeals observed in the *Mountain Fuel* case, Utah has traditionally applied the rule of *lex loci delictus* (i.e., the law of the place of injury) in tort cases. More recently, however, the Utah Supreme Court in *Forsman v. Forsman*, 779 P.2d 218, 219–20 (Utah 1989), adopted the "most significant relationship" test from the *Restatement (Second) of Conflicts of Laws* in identifying the law governing inter-familial tort liability, which others have extrapolated into an adoption of that same test for all tort claims. *See, e.g., Pacheco v. Hercules, Inc.*, 61 Fair Empl. Prac.Cas. (BNA) 825, 8 Indiv.Empl.Rights Cas. (BNA) 1146, 1993 WL 193200 (D.Utah 1993) (J. Greene). To date, no reported opinion of the Utah Supreme Court, the Utah Court of Appeals, the United States Court of Appeals for the Tenth Circuit or of any judge of this Court has addressed the question whether Utah follows, or is predicted to follow the approach to the application of workers' compensation statutes set forth in § 184 of the *Restatement (Second) of Conflict of Laws*.[5]

The current Utah approach to choice of law issues in contract cases is equally unclear.[6] To the extent that any issue in this

**2.** The New Mexico Workers' Compensation Act provides that its procedure and remedies are exclusive for job related injuries and death, and that the employer and employee are conclusively presumed to have surrendered their rights to procedures and remedies other than those provided in the Act. N.M.Stat.Ann. § 52–1–6 (Supp. 1991).

**3.** A week earlier, plaintiffs filed an Amended Complaint (dkt. no. 37), which *inter alia*, joined Universal Resources Corporation, a Texas corporation, as a defendant. Universal Resources Corporation filed its answer on February 18, 1993 (dkt. no. 44).

**4.** On March 18, 1993, this Court granted leave for plaintiffs to supplement their memorandum through (1) the addition of Exhibit No. 23, a copy of a December 30, 1992 Compensation Order entered by the New Mexico Workers Compensation Administration in *Dennis Snyder vs. Welltec, Inc., and National Union Fire Company*, WCA No. 92–08812; and on April 22, the addition of Exhibit 24, a copy of a March 25, 1993 Compensation Order entered by the New Mexico Work-

ers Compensation Administration in *Jose Borja vs. Welltec, Inc., and National Union Fire Company*, WCA No. 92–08811. That Order reflects an administrative determination that plaintiffs Snyder's and Borja's claims arising out of the September 1, 1991 incident are within that agency's jurisdiction, are governed by the New Mexico workers compensation statute and that each claimant is entitled to receive medical and disability benefits for injuries suffered in the September 1, 1991 incident.

**5.** At a January 5, 1994 Status Report and Scheduling Conference, the Court inquired of counsel whether they wished to certify the choice of law issue to the Utah Supreme Court for purposes of clarification of the current Utah law on this question. *See* Utah R.App.P. 41. Counsel indicated that they did not desire certification.

**6.** Though the few Utah cases available apply the *lex loci contractus* (i.e., the law of the place of making the contract) rule, recent federal cases assume that Utah would apply the *Restatement (Second)'s* "most significant relationship" test in

action may turn on a question of contract interpretation,[7] the General Agreement between Celsius and WellTech includes a choice of law clause selecting Utah law as the law governing that contract. *See* General Agreement at 11, ¶ XII–3 (Exhibit 2, "Exhibits to Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment," dated December 11, 1992 (dkt. no. 18)). While the Utah courts apparently have not taken a definitive position concerning the enforceability of such clauses, the assumption made by the federal courts has been that Utah would apply general contract principles as expressed in *Restatement (Second) of Conflict of Laws* § 187 (1971, 1988), generally upholding their validity.[8] *See, e.g., Shearson Lehman Brothers, Inc. v. M & L Investments,* 10 F.3d 1510, 1514 (10th Cir.1993).

■ The September 1, 1991 incident having occurred at the Cutthroat Unit No. 1 wellsite in Colorado, the *lex loci* rule would embrace Colorado law as the law governing

plaintiffs' tort claims. However, plaintiffs urge that under the "most significant relationship" test, New Mexico law should be applied to protect the interest of plaintiffs as New Mexico residents working for a New Mexico employer, who commuted to a Colorado workplace where they were injured. The initial step in resolving the choice of law question is to determine whether a conflict exists between the law of the interested states. *See In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 605 n. 2 (7th Cir.1981).[9]

## II. NEW MEXICO LAW

■ To avail itself of the exclusive remedy provisions of the New Mexico Workers' Compensation Act, Celsius must establish "the existence of some form of an employer-employee relationship, either statutory or actual, ..." *Quintana v. University of California,* 808 P.2d 964, 966 (N.M.App.1991). To be considered a "statutory" employer under

---

contracts cases. *See Mountain Fuel,* 933 F.2d at 888; *Wisconsin Mortgage Assurance Corp. v. HMC Mortgage Corp.,* 712 F.Supp. 878, 880 (D.Utah) (J. Anderson); *Overthrust Contractors, Inc. v. Home Ins. Co.,* 676 F.Supp. 1086, 1088 (D.Utah 1987) (J. Greene); *First Security Bank of Utah, N.A. v. Felger,* 658 F.Supp. 175, 180–81 (D.Utah 1987) (J. Winder). In *Morris v. Sykes,* 624 P.2d 681, 683–84 (Utah 1981), the court ruled that where a contract is entered into and is to be performed in a foreign jurisdiction, the law of that jurisdiction is to be applied, citing to *Catchpole v. Narramore,* 102 Ariz. 248, 428 P.2d 105 (1967), which in turn refers to "the broad, unquestioned rule that the law of the place, lex loci, will govern ...," in that case the law of the place of performance, *lex loci solutionis.* 428 P.2d at 108.

7. Plaintiffs were not parties to the General Agreement between Celsius and WellTech, and no party has asserted that the Utah workers' compensation statute applies directly to the plaintiffs' claims. By its terms, the Utah statute would appear to exclude these plaintiffs from coverage because they were not "hired or ... regularly employed in this state," as required by *Utah Code Ann.* § 35–1–54, notwithstanding whatever contacts Celsius may have with this forum. *Puckett v. Board of Review of the Industrial Commission of Utah,* 734 P.2d 468, 469 (Utah 1987).

8. The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either (a) the chosen

state has no substantial relationship to the parties or the transaction and their is no other reasonable basis for the parties [sic] choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue which ... would be the state of the applicable law in the absence of an effective choice of law by the parties. *Restatement (Second) of Conflict of Laws* § 187 (1971, 1988).

9. Of course, the choice of law question has practical significance only if the application of one state's law would yield a different result than would the law of another state. If no differing result obtains, the court may apply the law of the forum. *See Wilfred Academy of Hair & Beauty Culture v. Southern Association of Colleges and Schools,* 957 F.2d 210, 214 (5th Cir.1992). In this instance, however, the tests employed by Colorado, New Mexico or Utah to determine who may avail themselves of tort immunity as a "statutory employer" each differ from the others. Moreover, status as a statutory employer does not automatically ensure immunity from tort liability under Utah law. *See, e.g., Pate v. Marathon Steel Co.,* 777 P.2d 428, 429–31 (Utah 1989) (statutory immunity not available to statutory employer who has not been required to pay workers' compensation benefits). It cannot be said with any certainty, therefore, that no differing result would obtain if Utah law was to be applied.

the New Mexico statute, N.M.Stat.Ann. § 52–1–22, "it is the relationship between the general contractor and the employer of the claimant that is dispositive ..." *Quintana,* 808 P.2d at 966.

> To qualify as a statutory employer under Section 52–1–22, however, a contractor must meet two express conditions. First, the general contractor must procure work, wholly or in part, to be done by a contractor *other than* an independent contractor. *See* § 52–1–22. That is, the statute, by its own terms, provides that it is not applicable to work performed by independent contractors. Second, the work to be done must be part or process in the trade, business, or undertaking of the general contractor....

*Id.* (citations omitted). Celsius submits that the work being performed by plaintiffs as employees of its contractor, WellTech, *viz.,* the removal of production casing from oil wells being converted to water wells, was "part of its regular business practice" as the operator of all wells in the Cutthroat Unit. Statement of Undisputed Material Facts, at ¶¶ 1, 3. This would appear to satisfy the second requirement under the New Mexico statute.

■ The more troublesome question is whether the work done by WellTech is work performed by other than an "independent contractor" within the meaning of § 52–1–22. New Mexico courts apply a "power to control" test in determining whether this condition has been satisfied. *Quintana,* 808 P.2d at 967 (citing *Yerbich v. Heald,* 89 N.M. 67, 547 P.2d 72 (Ct.App.1976)).[10]

■ Here, it appears, plaintiffs must tread a fine line. New Mexico law would appear to require the plaintiffs to prove *some* measure of control on the part of Celsius in order to establish the requisite duty of care underpinning the plaintiffs' negligence claims

against Celsius, though apparently not as much control as would be required to negate WellTech's status as an independent contractor under the "power to control" test, which would automatically invoke "statutory employer" immunity. In *DeArman v. Popps,* 75 N.M. 39, 400 P.2d 215 (1965), the court reversed summary judgment entered by the trial court in favor of Sunset International Petroleum, an owner-operator of a gas well, as against DeArman, who was employed as a roughneck by Lawrence Drilling to perform well service work on Sunset's well under Lawrence's contract with Sunset. Plaintiff was injured when a circulating head assembly, used at the request of Sunset's supervisor and supplied to Lawrence by Sunset, fell and struck him. No safety chains had been installed at the time of the incident. The *DeArman* court rejected Sunset's argument that proof of the degree of control required to establish a duty of care on the part of Sunset for purposes of plaintiff's negligence claim would likewise establish workers' compensation as the plaintiff's exclusive remedy. Quoting an extract from § 414 of the first *Restatement of Torts,* the court observed:

> " 'One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.' "

Under Comment (a) it is noted that

> " '... The employer may, however, retain control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done.... Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated

---

**10.** In this respect, the New Mexico law appears similar, though not identical to the Utah workers' compensation statute. Utah Code Ann. § 35–1–42(5)(a) (1988) reads in pertinent part:

> If any person who is an employer procures any work to be done wholly or in part for him *by a contractor over whose work he retains supervision or control, and this work is a part or process in the trade or business of the employer,*

the contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of these subcontractors, are considered employees of the original employer. [Emphasis added.]

It is not clear from the limited case law whether Utah and New Mexico use an identical yardstick in measuring a contractor's power of control.

in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.'"

75 N.M. at 46–47, 400 P.2d at 219 (quoting *Bergquist v. Penterman,* 46 N.J.Super. 74, 134 A.2d 20 (1957), which in turn quoted the *Restatement* ). Where the contractor had only "general supervision of the desired results" and the plaintiff's employer "had its own independence of means and methods," and was not "at any time in a position of complete subservience to [contractor]," the *DeArman* court concluded that plaintiff was not an employee of the contractor for purposes of the workers' compensation statute. *Id.,* 75 N.M. at 42–43, 49, 400 P.2d at 217, 221.

In this instance, the contract documents between Celsius and WellTech include express language characterizing WellTech as an independent contractor. *See* General Agreement, dated August 17, 1989, at Art. IV (Exhibit 2, "Exhibits to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, dated December 14, 1992 (dkt. no. 18) ("Pltfs' Exhs.")). Celsius' "Statement of Undisputed Material Facts" (Celsius Mem. at 3–7) does not elaborate upon the degree of control exercised by Celsius over WellTech's performance of the well conversion work.

The allegations of the Amended Complaint assert that one Rodney Johansen, an employee of co-defendant Universal Resources Corporation, was responsible "to be at the wellsite at all times during the recompletion in order to ensure that the work done by WellTech and other contractors was done safely and in accordance with the requirements of the defendant Celsius and in compliance with accepted industry standards and various state and federal regulations." *Id.* at ¶ 10. It further alleges that Johansen was not present at the wellsite at the time of the

September 1, 1991 incident by reason of intoxication. *Id.* at ¶ 11. The Amended Complaint does not illuminate any contractual relationship between Universal Resources and Celsius, though it may be inferred that Johansen was somehow acting on Celsius' behalf.[11] The averments as to Celsius' alleged duty of care and its breach of that duty are cursory at best.

As was the case in *DeArman,* a genuine issue of fact exists as to the degree of control which Celsius could exercise, and indeed, *did* exercise, over the work performed by WellTech employees, including plaintiffs, at the Cutthroat Unit No. 1 wellsite, foreclosing summary judgment both as to WellTech's status as "independent contractor," on which depends Celsius' status as "statutory employer" under the New Mexico statute, and as to whether Celsius owed a duty of care to plaintiffs which was breached by Celsius' alleged negligence. If New Mexico law applies, defendant's motion for summary judgment must be denied.

### III. COLORADO LAW

In *Melody Homes, Inc. v. Lay,* 44 Colo.App. 49, 610 P.2d 1081 (1980), and *Campbell v. Black Mountain Spruce, Inc.,* 677 P.2d 379 (Colo.App.1983), the Colorado Court of Appeals articulated a two-part test to be applied in determining whether a defendant qualifies as a "statutory employer" under the contracting out provisions of the Colorado Workers Compensation Act, Colo. Rev.Stat.Ann. § 8–48–101:

> (1) The work contracted out must be a part of the normal business operations of the contracting company; and (2) the work performed must be such that, absent the contractor's services, the work "would of necessity be provided by the employers' employees." ...

*Wagner v. Coors Energy Co.,* 685 P.2d 1380, 1381 (Colo.App.1984) (citation omitted).[12] In

---

**11.** Universal Resources filed an answer and remains as a defendant in this action. As of the January 5, 1994 Status Report and Scheduling Conference, Universal had not joined in Celsius' motion.

**12.** As counsel for Celsius points out, the Colorado case law concerning statutory immunity often refers to provisions found in earlier versions of the Colorado Workers' Compensation Act, codified in *Colo.Rev.Stat.* §§ 8–48–101 & –102, 8–42–101, –102 and predecessor provisions. The language of these sections is currently found in

*Wagner,* Coors Energy Co. contracted with N.L. Well Service to obtain well service. Plaintiff Wagner was employed by N.L. Well Service to perform work pursuant to N.L.'s contract with Coors, and was injured while performing that work. While the materials submitted by Coors in support of its motion for summary judgment established that the work performed by N.L. was part of Coors' normal business operations, no showing was made "that such work would be performed by Coors' employees absent N.L.'s services." *Id.* at 1381. Absent such a showing, the court of appeals held that "Coors has failed to demonstrate immunity as a matter of law under § 8–48–101. *Melody Homes, Inc. v. Lay, supra.*" *Id.*

 Celsius argues that it qualifies as a statutory employer under the Colorado statute. Paragraph 4 of Celsius' Statement of Undisputed Material Facts endeavors to satisfy the second element of the *Melody Homes* test and avoid the pitfall encountered by Coors: the affidavit of Eric D. Marsh, Celsius' Senior Petroleum Engineer, dated October 12, 1992 ("Marsh Aff."), suggests that "[i]f Celsius did not contract this work out, it would be required to have Celsius' own employees perform the work." *Id.* at ¶ 6. This assertion was not controverted by plaintiffs, and thus for purposes of summary judgment is taken as true. *See* D.Ut. Rule 202.

Celsius also contends that "[t]he work contracted out" was in fact "a part of the normal business operations of the contracting company," Celsius. *Wagner,* 685 P.2d at 1381. Paragraph 3 of Celsius' Statement of Undisputed Material Facts states that "[a]s part of its regular business practice, Celsius occasionally converts wells which cease to produce oil or no longer produce oil economically (or, become 'watered out') into fresh water wells to supply water to be pumped into other wells," citing to paragraph 4 of the Marsh Affidavit. Plaintiffs likewise do not controvert this statement as contemplated by local Rule 202. Taken as true, this averment would appear to satisfy the *Melody Homes* test as it was articulated in *Wagner.* Celsius thus would qualify as a statutory employer under the Colorado workers' compensation statute.

Celsius appears to have carried its initial burden on summary judgment to demonstrate compliance with the Colorado statute through its agreement requiring WellTech to provide workers' compensation coverage.[13] The Court is not otherwise persuaded by plaintiffs' arguments concerning whether WellTech complied with various notice and reporting requirements under the Colorado statute. *See* Pltfs' Opp.Mem. at 40–42 (citing *Colo.Rev.Stat.* §§ 8–43–101, –102(b)). The particular requirements cited are either not germane to the question of coverage, or appear to have been complied with by WellTech, without prejudice to plaintiffs' rights under either the Colorado or New Mexico statutes. *See* Celsius Mem. at Exhibit "F"; Celsius Reply Mem. at 22–24 & n. 26. If Colorado law applies, Celsius' motion for summary judgment should be granted. *See generally Black v. Cabot Petroleum Corp.,* 877 F.2d 822, 825 (10th Cir.1989).[14]

## IV. CHOICE OF LAW UNDER THE "MOST SIGNIFICANT RELATIONSHIP" TEST

Having determined that in the context of this action, a conflict between New Mexico

---

reenacted form at *Colo.Rev.Stat.* §§ 8–41–101 & –102 (Supp.1992). *See* Celsius Mem. at 8 n. 2.

**13.** Plaintiffs initially advanced an argument that "Celsius has not made any payments into [the] Colorado workers' compensation fund, and thus is in no position to invoke the *quid pro quo* of Colorado immunity." Pltfs' Opp.Mem. at 21. The pertinent provisions of the Colorado statute, however, do not appear to support plaintiffs' contention. *See* Colo.Rev.Stat. § 8–41–401 (Supp.1992), and Part IV, *infra.*

**14.** As a part-owner of the Cutthroat Unit, Celsius also asserts an entitlement to statutory immunity

as a "statutory property owner" under *Colo.Rev. Stat.* § 8–41–402 (Supp.1992), citing *Wagner v. Coors Energy Co.,* 685 P.2d 1380, 1381–82 (Colo. App.1984). *See* Celsius Mem. at 12–13. Plaintiffs do not address this contention in their memoranda, or even refer to the *Wagner* case; their more generalized arguments concerning compliance with notice and reporting requirements under the Colorado statute also miss the mark. Based upon the Court's own independent review of this theory in light of *Wagner,* it appears that Celsius' position is well taken, if Colorado law applies.

and Colorado law likely exists, this Court must evaluate the policies underlying the law of each state and the interest that each state may have in the application of its law to the action now pending before it.

■ That the plaintiffs have elected to file workers' compensation claims in New Mexico rather than Colorado is not determinative. In *Olson v. American Oil Co.*, 604 F.2d 26 (8th Cir.1979), an employee injured on the job in North Dakota chose to file his workers' compensation claim in Minnesota, where he also worked and where his employer also provided coverage, and to bring a tort action against the employer in North Dakota. The court held that the immunity afforded employers under the North Dakota workers' compensation statute was not defeated by the plaintiff-employee's election to pursue benefits in Minnesota. Likewise, plaintiffs' pursuit of workers' compensation benefits in New Mexico does not determine the choice of law issue as to Celsius' entitlement to statutory immunity. Plaintiffs' reference at page 10 of their memorandum to 4 A. Larson, *The Law of Workmen's Compensation* § 87.11 at 16–67 n. 1 (1990), is not in fact controlling. The 1972 recommendation by the National Commission on State Workmen's Compensation Laws indicates that where, as here, plaintiffs may choose to claim benefits under either the New Mexico or Colorado statutes, their choice of benefits under the New Mexico statute should be respected.[15] The question of which state's exclusive remedy provision will apply in favor of their employer (or one who contracts out work to their employer) raises different considerations.[16]

■ Though Utah has not expressly adopted the rule, Celsius urges that Section 184 of the *Restatement (Second) of Conflict of Laws* should be applied to determine this question. Section 184 reads as follows:

> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
> (a) the plaintiff has obtained an award for the injury, or
> (b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business within the state, or (4) whose local law governs the contract under the rules of §§ 187–188 and 196.

Comment a to § 184 envisions broad application of the section text—"to all actions in tort or wrongful death that may be brought to recover damages for injuries suffered by an employee in the course of his employment"— and to all defendants within the scope of a workers' compensation statute, "whether the defendant is required to obtain workmen's compensation himself or to provide that some third person, such as a subcontractor, obtain such insurance."

Colorado appears to be among those states which extend "a corresponding immunity from liability for tort and wrongful death ... to an employer of an independent contractor with respect to the latter's employees and to a general contractor with respect to the em-

---

**15.** The Court notes that the record reflects that plaintiffs received some benefits paid under the Colorado workers' compensation coverage provided by WellTech, though they had not themselves filed claims for benefits in Colorado. *See* "Statement of Undisputed Material Facts" at ¶ 8, Celsius Mem. at 6–7; "Statement of Undisputed Material Facts" at ¶¶ 20–22, Pltfs' Opp.Mem. at 4–5. The choice of law implications of those payments, where plaintiffs had not elected to pursue them, are unclear. *Cf. Garcia v. American Airlines*, 12 F.3d 308, 311–14 (1st Cir.1993).

**16.** As observed in 4 A. Larson, *Workmen's Compensation Law* § 88.11 (1990):

> It is generally held that, if a damage suit is brought in the forum state by the employee against the employer or statutory employer, the forum state will enforce the bar created by the exclusive remedy statute of a state that is liable for workmen's compensation as the state of employment relation, contract or injury. Thus, although the local state might ... give the affirmative benefit of its own compensation act as to this employee, ... it does not follow that the foreign statute will be disregarded when the employee is trying to get out of the compensation system altogether and back into the common-law damage system....

ployees of a subcontractor." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 184 comment b.[17] Section 8–41–401(2) of the Colorado Workers' Compensation Act provides that where a subcontractor provides coverage under the statute, neither the subcontractor, the subcontractor's employees or its insurer "shall have any right of contribution or action of any kind ... against the person, company or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof...." COLO.REV.STAT. § 8–41–401(2) (Supp.1992). The General Agreement between WellTech and Celsius requires WellTech to provide workers' compensation coverage and to bear the expenses of that coverage. *See* General Agreement (Exhibit 2 to Pltfs' Opp.Mem.) at 8, ¶ V–3. WellTech in fact paid premiums to National Union Fire Insurance Company to provide workers' compensation insurance coverage under both the New Mexico and Colorado statutes. *See* Celsius Mem. at Exhibit "F." Assuming that Celsius in fact qualifies as a statutory employer who is "contracting out" work within the meaning of *Colo.Rev.Stat.* § 8–41–401(1), *see* Part III *supra*, then Celsius may avail itself of the statutory immunity as extended by § 8–41–401(2). *See, e.g., Finlay v. Storage Technology Corp.,* 764 P.2d 62, 64 (Colo. 1988).

The policies underpinning § 184 are explained in Comment b:

It is thought unfair that a person who is required to provide insurance against a risk under the workmen's compensation statute of one state which gives him immunity from liability for tort or wrongful death should not enjoy that immunity in a suit brought in other states. Also to deny

a person the immunity granted him by a workmen's compensation statute of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be....

Section 184 thus seeks to preserve "the fundamental *quid pro quo* of workers' compensation—providing an expeditious and certain remedy for employees in return for a limitation on the employer's liability...." *Eger v. E.I. Du Pont DeNemours Co.,* 110 N.J. 133, 539 A.2d 1213, 1216–17 (1988). Preservation of that fundamental *quid pro quo* in no way offends Utah public policy; Utah law has long acknowledged its existence:

[T]he purpose of the [workers' compensation] act is to provide speedy and certain compensation for workmen and their dependents and to avoid the delay, expense and uncertainty which were involved prior to the act; and the concomitant purpose of protecting the employer from hazards of exorbitant and in some instances ruinous liabilities.

*Adamson v. Okland Constr. Co.,* 29 Utah 2d 286, 508 P.2d 805, 807 (1973).

Plaintiffs would strike a different balance of interests, one preferring the interest in securing compensation for injured domiciliaries over preserving the workers' compensation *quid pro quo.* Under plaintiffs' theory in this case, the prediction of the potential cost of industrial accidents would depend upon an employer's awareness of the domicile of individual employees rather than the particular statutory scheme under which that employer was required to provide workers' compensation coverage. Compliance with statutory provisions requiring coverage would provide no assurance to an employer

---

**17.** This differs to some extent from the policy currently in force under the Utah workers' compensation statute. The Utah Supreme Court has held that statutory immunity did not extend to statutory employers who had not in fact been required to pay workers' compensation benefits to the injured plaintiff-employee, construing a 1975 amendment to the Utah workers' compensation statute to narrow the class of "employers" entitled to statutory immunity. *Pate v. Marathon Steel Co.,* 777 P.2d 428, 429–31 (Utah 1989); *Bosch v. Busch Development, Inc.* 777 P.2d 431, 432 (Utah 1989).

As noted above, the Utah workers' compensation statute does not apply to the claims of these plaintiffs. *See Puckett v. Board of Review of the Industrial Commission of Utah,* 734 P.2d 468, 469 (Utah 1987). Were the Utah statute to be applied to the facts of this case, Celsius' tort immunity as a "statutory employer" would turn on whether Celsius actually provided workers' compensation benefits to these plaintiffs. It appears from the parties' summary judgment materials that Celsius in fact did not.

or contractor that potential tort liability and ultimate costs have been limited in any meaningful way. Employers would be treated as though they had abandoned the workers' compensation *quid pro quo* in choosing to hire workers, or using subcontractors who hire workers who happen to be domiciled in other states.[18]

Courts in other jurisdictions which in recent years have grappled with this problem generally have not adopted plaintiffs' position that the state having injured domiciliaries has the greater governmental interest where the work was performed and the injury occurred in another state. Rather, the reported cases have largely held that the state where the work was performed and the injury occurred has a greater interest in preserving the workers' compensation *quid pro quo,* and that the tort immunity provided statutory employers under that state's statute should be enforced.

In *Eger v. E.I. Du Pont DeNemours Co.,* 110 N.J. 133, 539 A.2d 1213 (1988), the plaintiff employee, a New Jersey resident, brought a tort action against his employer, a New Jersey corporation, for injuries suffered while working at Du Pont's Savannah River Nuclear Plant, where plaintiff's employer was engaged by Du Pont as a subcontractor. Under the New Jersey workers' compensation statute, immunity from tort liability extends to plaintiff's employer, a subcontractor, but not to the general contractor. Under the South Carolina statute, however, "a general contractor is equated with a worker's immediate employer for the purposes of workers' compensation." 539 A.2d at 1215.

Similarly, in *Van Slyke v. Worthington,* 265 N.J.Super. 603, 628 A.2d 386 (1992), the New Jersey court applied New York law to a claim arising from injuries suffered by a New Jersey domiciliary through exposure to asbestos in his New York workplace, concluding that New York had "a far more compelling interest in regulating dangers inherent in construction activity conducted on its soil." 628 A.2d at 391.[19]

*Wheeler v. Parker Drilling Co.,* 803 P.2d 1379 (Wyo.1991), involved a Wyoming worker's tort action against a Wyoming drilling company which had hired and employed the plaintiff in Wyoming, but had temporarily assigned plaintiff to work in Oregon, where he was injured. Plaintiff's employer provided workers' compensation coverage through an Oregon carrier while plaintiff was working in Oregon, at the same time discontinuing his coverage in Wyoming. Following his injury, plaintiff applied for and received workers' compensation benefits under the Oregon coverage. He then filed the Wyoming action against his employer, who in turn asserted the bar of statutory immunity under the Oregon statute. Upon certification of the choice of law question by the United States District Court for the District of Wyoming, the Supreme Court of Wyoming decided that the exclusive remedy provisions of the Oregon workers' compensation statute would not be deemed repugnant to Wyoming public policy and would be recognized under principles of interstate comity. 803 P.2d at 1383.[20]

Most recently, in *Ferren v. General Motors Corp.,* 137 N.H. 423, 628 A.2d 265 (N.H. 1993), the Supreme Court of New Hampshire, in response to questions certified by

---

**18.** Indeed, plaintiffs argue that "[h]ad Celsius wished to avoid the application of New Mexico law, all it needed to do was insist that WellTech not use its Farmington office when working on Celsius jobs. Alternatively, ... Celsius could have hired a Colorado contractor instead of Well-Tech." Pltfs' Opp.Mem. at 18.

**19.** *Farias v. Mattel, Inc.,* 153 Ariz. 113, 735 P.2d 143 (1986), expresses a different view: "Both in terms of compensation of an injured party and controlling tortious behavior, the state of residence of the parties has the most significant interest." 153 Ariz. at 115, 735 P.2d at 145. In *Farias,* however the court held that plaintiffs, circus performers and Florida residents, could

not escape the exclusive remedy provision of the Florida workers' compensation statute by bringing an action against their Florida-based circus employer in Arizona, where the injury occurred. "There appears no compelling Arizona interest in allowing non-residents to opt out of the compensation system during the few days each year that they may be employed in Arizona...." *Id.*

**20.** Contrary to Celsius' suggestion at page 16, note 8 of its initial memorandum, the Wyoming court in *Wheeler* did not decide whether or not Parker Drilling is immune from a negligence action by the Wheelers. "This," the court said, "is the function of the certifying court, which we will not usurp." 803 P.2d at 1382.

the United States District Court for the District of New Hampshire, determined that under New Hampshire choice of law rules, Kansas substantive law would apply to an action brought by a New Hampshire resident who was injured while working the defendant employer's plant in Kansas. Emphasizing the importance of predictability of results in consensual transactions, and that " '[r]eliance on a predictable choice of law protects the justifiable expectations of the parties [, and] assures uniformity of decision regardless of forum,' " *id.*, 628 A.2d at 267 (quoting *Clark v. Clark*, 107 N.H. 351, 354, 222 A.2d 205, 208 (1966)), the court in *Ferren* concluded that Kansas law would be the law expected to apply to a relationship involving employment in Kansas. The court rejected plaintiffs' argument that New Hampshire's interest in injured residents receiving compensation, thus lessening the "danger of becoming a financial burden on the State of New Hampshire," justifies applying New Hampshire law: "While we agree that New Hampshire has an interest in Mr. Ferren's compensation, when the factors relevant to the litigation are all located elsewhere, this factor is insufficient to sustain application of [New Hampshire] forum law." *Id.*, 628 A.2d at 268.

Given that the issue involved in the lawsuit is whether M. Ferren suffers from an occupational disease acquired during his employment with GMC, that Kansas has a justified expectation that disputes between a Kansas employer and employee regarding workplace injuries that occur within that state will be governed by its workers' compensation scheme, and that virtually all of the essential elements connected with the lawsuit are grouped within Kansas, analysis of the choice-influencing considerations reveals that Kansas law should be applied in this case....

*Id.* at 269. The *Ferren* court was not persuaded to reach a different result by the fact that under the Kansas statute, plaintiffs' action was barred because plaintiffs' injuries, largely a consequence of chronic lead poisoning, did not manifest themselves until more than one year after he left defendant's employment.[21]

Here, plaintiffs have availed themselves of their right to workers' compensation benefits under the New Mexico statute. The question now is whether Celsius may avail itself of statutory immunity under the Colorado statute, consistent with the rule of § 184 and the reasoning of cases such as *Eger* and *Ferren*. This Court concludes that a Utah court would apply § 184 to the choice of law issue presented in this case, and would not decide to prefer New Mexico's interest in having these plaintiffs obtain further compensation in the form of tort damages over preservation of the long-acknowledged workers' compensation *quid pro quo* as defined by the Colorado Workers' Compensation Act, particularly where Celsius, under the terms of its General Agreement with WellTech, in fact required WellTech to provide workers' compensation coverage for its employees, including these plaintiffs.[22]

---

**21.** *Ferren* differs somewhat from the instant case because unlike these plaintiffs, the Ferrens began residing in New Hampshire *after* Ferren concluded his employment with the defendant. Messrs. Snyder and others were residing in New Mexico at all times pertinent to this proceeding, including at the time of injury.

**22.** *Campuzano v. Kim*, 751 F.Supp. 36 (E.D.N.Y. 1990), does not compel a different result. *Campuzano* involved a third-party indemnity claim against the federal government arising out of a New Jersey automobile accident involving a New York-resident federal employee, who had sought and received workers' compensation benefits in New York. The court determined that New York law, which allowed indemnity claims against an employer in an action by an injured employee against a third party, should apply, rather than that of the place of injury, New Jersey. The

government had not complied with the New Jersey workers' compensation statute by providing coverage in New Jersey, and "[t]hus the integrity of the workers compensation *quid pro quo* is not at risk, as it may have been *vis-a-vis* South Carolina in *Eger*." 751 F.Supp. at 40.

Cases such as *Carroll v. Lanza*, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), (Pltfs' Opp. Mem. at 13, 24–25), would lend plaintiffs some assistance if plaintiffs were seeking a remedy under Colorado law (as the location of the job site and the injury) in addition to benefits received from New Mexico (their state of residence). *Bekkedahl v. North Dakota Workmen's Compensation Bureau*, 222 N.W.2d 841 (N.D. 1974), (Pltfs' Opp.Mem. at 12–13), and *MacKendrick v. Newport News Shipbuilding & Drydock Co.*, 59 Misc.2d 994, 302 N.Y.S.2d 124 (1969), (Pltfs' Opp.Mem. at 25–26), support plaintiffs'

That a different result might obtain under the Utah statute does not alter the effect of § 184 as applied to these facts. At least at one time, the policy of Utah law in situations involving multiple employers appeared to be "that the employer or organization closest to the 'employee' must be *required* by contract to provide workers' compensation benefits· by the general contractor or other subcontractors in immediate privity in the hierarchy," and where such requirement is imposed and met, it follows that others in the hierarchy of possible statutory employers should enjoy "the same scope and shield of protection" as against tort actions. *Lamb v. W–Energy, Inc.*, 663 F.Supp. 395, 398 (D.Utah 1987), *reversed,* 884 F.2d 1349 (10th Cir.1989). In 1989, however, the Utah Supreme Court narrowed that scope, ruling that under a 1975 amendment to the Utah workers' compensation statute, Utah's exclusive remedy provisions did not extend to statutory employers who had not in fact been required to pay workers' compensation benefits to an injured plaintiff-employee. *Pate v. Marathon Steel Co.*, 777 P.2d 428, 429–31 (Utah 1989); *Bosch v. Busch Development, Inc.* 777 P.2d 431, 432 (Utah 1989). The court in *Pate* perceived the amendment to express a legislative intent to narrow the class of "employers" entitled to statutory immunity against tort liability.

Plaintiffs argue at length that Utah's narrower reading of its own workers' compensation statute represents more than mere statutory interpretation; plaintiffs read *Pate* as expressing a fundamental public policy favoring use of the traditional tort remedy to secure compensation for injured employees, one that should overcome the application of Colorado in this case pursuant to choice of law principles. *See* Pltfs' Opp.Mem. at 29–38.[23]

Plaintiffs cite *Young v. Mobil Oil Corp.*, 85 Or.App. 64, 735 P.2d 654 (1987), and *Reid v. Hansen,* 440 N.W.2d 598 (Iowa 1989), as analogous cases reaching that same result. *Young v. Mobil Oil Corp.* addressed the public policy underpinning the workers' compensation statute, but did so in a context other than enforcement of another state's exclusive remedy provisions. *Young* involved a contractual indemnity clause providing that the employer be indemnified against any loss due to injuries in the workplace. The court found that it frustrates the policy of the statute encouraging employers to promote safe conditions in the workplace to permit an employer to contract away its exposure to liability. *Reid v. Hansen* also confronts the choice of law question in a context different than the one presented here. In *Reid,* plaintiff was injured while working in Iowa for his Nebraska-based employer. The employer had not obtained workers' compensation coverage in Iowa. Notwithstanding plaintiff's receipt of workers' compensation benefits in Nebraska, the Iowa court held that he could maintain his tort action in Iowa; the employer's failure to provide coverage in Iowa triggered express right-to-sue provisions of the Iowa statute, and denied the employer the benefit of that state's exclusive remedy provision. By the terms of the Iowa statute, which made no distinction between resident and non-resident workers, plaintiff could maintain his action. The *Reid* court concluded that § 184 simply did not address the situation there presented.

Utah has not had occasion in a case reported since *Pate* to address plaintiffs' public policy theory. *See Aragon v. Clover Club Foods Co.*, 857 P.2d 250 (Utah Ct.App.1993) (exclusive remedy provision extends to parent company of actual employer); *Riddle v. Mays,* 780 P.2d 1252 (Utah 1989) (exclusive remedy provision does not extend to subcontractor other than plaintiff's actual employer). In any event, this case does not present the problem of an employer subject to liability under the Utah statute attempting to shift that liability to another by indemnity agreement, as in *Young,* or the problem of compensating an employee injured while working in Utah, as in *Reid.*

claim for workers' compensation benefits in New Mexico.

**23.** "When the conflict of laws rule of a forum refers to the law of another jurisdiction, there is

a public policy exception to the application of foreign law which is contrary to the strong public policy of the forum." ` *Alexander v. Beech Aircraft Co.*, 952 F.2d 1215, 1223 (10th Cir.1991).

That the scope of the exclusive remedy immunity afforded by the Utah statute differs from that of Colorado does not compel the conclusion that enforcement of Colorado's statute would offend Utah public policy. As the court observed in *Eger:*

> South Carolina has a legitimate interest in the application and effectuation of its workers' compensation laws. This interest is not outweighed by any important New Jersey governmental interest that would be materially furthered by allowing plaintiffs to maintain their tort suit against Du Pont. Furthermore, the concern that led South Carolina to immunize general contractors, the necessity of preserving the fundamental quid pro quo of workers' compensation limiting the liability of a party that bears the expense of providing compensation coverage, is also reflected in the structure of our own workers' compensation system. The only relevant difference between the two states' laws is that South Carolina extended the benefits and burdens conferred on immediate employers by its workers' compensation statute to general contractors, in order to provide covered employees with a greater certainty of recovery.

539 A.2d at 1219–20. Likewise, the "fundamental *quid pro quo*" is reflected in both the Utah and Colorado statutes; the fact that Colorado extends statutory immunity to a contractor who requires its subcontractor to provide coverage concerning the work its contracts out, leaving it to those parties to allocate the cost of that coverage,[24] does not offend Utah public policy.

The Court declines plaintiffs' invitation to depart from the general rule honoring the exclusive remedy provision of another state's workers' compensation statute under the circumstances presented here. *See generally* 4 A. Larson, Workmen's Compensation Law § 88.11 (1990). Plaintiffs may fully avail themselves of the benefits available under the New Mexico workers' compensation scheme, and, it seems, are already in the process of doing so. Coverage was also provided under the Colorado statute by plaintiffs' employer, WellTech, pursuant to its General Agreement with Celsius. That plaintiffs elected not to pursue their parallel remedy under the Colorado scheme does not negate the legal protection afforded to Celsius under the Colorado statute, the one in force where the work it contracted out to plaintiffs' employer was to be performed, and under which it required coverage to be provided by WellTech. Therefore,

**IT IS ORDERED** that defendant Celsius Energy Company's motion for summary judgment is GRANTED.

---

24. Unlike the situation with regard to true third parties, however, a subcontractor and general contractor can adjust the terms of their contractual relationship to allocate the burden of providing compensation coverage. See Parker v. Williams & Madjanik, ... ("As a practical matter [the general contractors] absorbed the cost of coverage through their contracts with those who agreed to actually perform the work.").
*Eger,* 539 A.2d at 1219 (citations omitted).