Kenny Jim SHAW, Plaintiff and Appellant,

v.

LAYTON CONSTRUCTION COMPANY, INC., a Utah corporation; STEEL DECK ERECTORS, INC., a Utah corporation; and John Does A to Z, Defendants and Appellees.

LAYTON CONSTRUCTION COMPANY, INC., Third-party Plaintiff,

v.

BILT–RITE CONCRETE, INC., a Nevada corporation; I. Christensen, Inc., a Nevada corporation or partnership; Harv & Higham Masonry, a Utah corporation; and Tech Steel, a Utah corporation; Third-party Defendants.

No. 930475–CA.

Court of Appeals of Utah.

April 8, 1994.

Steven B. Wall, Cory R. Wall (argued), Wall & Wall, a.p.c., Salt Lake City, for appellant.

Lee C. Henning (argued), David C. Richards, Christensen, Jensen & Powell, Salt Lake City, for appellee Layton Const.

Ford G. Scalley, Steven B. Smith (argued), Scalley & Reading, Salt Lake City, for appellee Deck Erectors.

## OPINION

Before ORME, Associate P.J., and GREENWOOD and JACKSON, JJ.

ORME, Associate Presiding Judge:

Plaintiff Kenny Jim Shaw appeals the trial court's order dismissing his negligence action against defendants Layton Construction Company and Steel Deck Erectors, Inc. Shaw claims the trial court erred in applying Nevada workers' compensation law, which precludes his negligence action, rather than Utah law, which permits it. We reverse the trial court's order and remand the case for further proceedings consistent with this opinion.

## FACTS

On February 5, 1990, Shaw was injured when he fell through a hole in the roof while working on the construction of a state prison in Ely, Nevada. At the time of the injury, Shaw was a Utah resident employed by Harv & Higham Masonry, a Utah corporation, which was a subcontractor on the Nevada project. Shaw was first hired by Harv & Higham in May of 1989 to work on a project in Gunnison, Utah. Shaw began work at the Nevada site in November of that year.

Defendant Layton Construction, a Utah corporation, was the general contractor on the Nevada project. In July of 1989, Layton subcontracted with Harv & Higham in Salt Lake City for the masonry work on that project. At the same time, Layton also subcontracted with Steel Deck Erectors, another Utah corporation, to perform all steel framing and decking work.

Subsequent to his injury, Shaw applied for and received workers' compensation benefits in Utah from his employer, Harv & Higham. He thereafter filed suit against Layton and Steel Deck, as authorized by Utah Code Ann. § 35–1–62 (1988), alleging their negligence contributed to his injuries. While Shaw's amended complaint also named John Does A through Z as defendants, Shaw has not sought to further amend his complaint and name additional, actual defendants.

Defendant Layton Construction filed a motion to dismiss, and defendant Steel Deck moved for summary judgment. Both parties claimed that Nevada, rather than Utah, workers' compensation law applied, and that, under Nevada law, Shaw was precluded from suing them for negligence. After a hearing, the trial court granted both motions. Employing the *lex loci delicti* choice of law approach, the court ruled that Nevada law applied because the injury occurred in that state. As a result, the court concluded that Layton and Steel Deck were immune from suit under Nev.Rev.Stat. §§ 616.085, 616.270, 616.560 (1992), which preclude common law negligence actions against statutory "employers," such as the general contractor, and "co-employees," including other subcontractors.

On appeal,[1] Shaw claims that the trial court erred in ruling that Nevada, rather than Utah, workers' compensation law applies. Shaw argues both that Utah law has extraterritorial effect and that a choice of law approach other than *lex loci delicti* is required in workers' compensation cases, the utilization of which would result in the application of Utah law in the instant case.

## ANALYSIS

The issue before this court is essentially one involving a choice of law. The trial court's determination that Nevada rather than Utah law applies constitutes a legal conclusion. "We accord a trial court's legal conclusions no deference but review them for correctness." *Kennecott Corp. v. State Tax Comm'n,* 862 P.2d 1348, 1350 (Utah 1993).

### A. Availability of Action Against Other Parties

■ Under Utah workers' compensation law, Shaw is precluded from suing his employer, but he is entitled to bring an action for damages against other parties allegedly responsible for his work-related injuries. *See* Utah Code Ann. § 35–1–62 (1988). According to section 35–1–62, in addition to

---

1. Shaw previously appealed the trial court's order. *See Shaw v. Layton Construction Co.,* 854 P.2d 1033 (Utah App.1993). However, the court of appeals lacked jurisdiction to hear Shaw's appeal at that time since there was neither a final

order of the trial court disposing of the case nor certification under Utah R.Civ.P. 54(b). *Id.* at 1037. Shaw has since obtained certification from the trial court pursuant to Rule 54(b).

receiving workers' compensation benefits from his employer, "the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns." *Id.*

While Nevada also authorizes additional negligence actions "under circumstances creating a legal liability in some person," it limits such actions to persons "other than the employer or a person in the same employ." Nev.Rev.Stat. § 616.560 (1992). Under the Nevada workers' compensation scheme, "subcontractors, independent contractors and the employees of either shall be deemed to be employees of the principal contractor." *Id.* § 616.085. Thus, Layton Construction is apparently deemed to be Shaw's "employer," while Steel Deck is his "co-employee," for purposes of Nevada workers' compensation. If properly so designated, they are immune from suit for common-law tort liability under Nevada law. *Id.* §§ 616.270, 616.560.

In sum, while Shaw's action against Layton Construction and Steel Deck is specifically authorized by Utah workers' compensation law, it is apparently prohibited under the Nevada workers' compensation scheme.

### B. Extraterritorial Application of Utah Statute

Shaw argues that the Utah workers' compensation statute has extraterritorial effect, whereby the Utah rule on actions against parties other than the actual employer applies globally, regardless of where a Utah employee is injured and regardless of the connection of the potential defendants to Utah. The Utah statute provides that

[i]f an employee who has been hired or is regularly employed in this state receives personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents in case of his death, shall be entitled to compensation according to the law of this state.

Utah Code Ann. § 35–1–54 (1988). Shaw points out that the statute defines "compensation" to "mean the payments and benefits provided for in this title." *Id.* § 35–1–44.

Shaw further argues that the right to bring a third-party action is a "benefit" under the statute, and therefore part of the "compensation" to which a Utah employee injured out of state is entitled. We disagree. A reading of the Utah workers' compensation act as a whole, *see* Utah Code Ann. §§ 35–1–1 to –107 (1988 & Supp.1993), demonstrates that the Legislature did not intend the term "benefits" to necessarily include the legal right to bring a common-law tort action against a nonemployer. Instead, at least in some respects, the statutory scheme implies that "benefits" mean only the additional sums due an injured worker for costs incident to his or her injury. According to Utah law, for example, an employee injured by accident in the scope of his or her employment "shall be paid compensation for loss sustained on account of the injury ... *and* such amount for medical, nurse, and hospital services and medicines ... as provided in this chapter." *Id.* § 35–1–45 (emphasis added). *See also id.* § 35–1–81 (providing for "such artificial means and appliances necessary to treat the patient" in addition to compensation for injuries sustained and payment for medical services).

In other instances, the statutory scheme treats "benefits" as a synonym for the "payments" to which the injured worker is entitled or as a synonym for "compensation" as a whole. *See id.* § 35–1–46 (speaking of "payment of workers' compensation benefits"); *id.* § 35–1–46.10 (enforcing "payment of benefits"); *id.* § 35–1–99 ("claim for benefits" barred by statute of limitations if employer is not notified within 180 days).

Whether the Legislature intended "benefits" to mean precisely the same thing as the "compensation" to which an injured worker is entitled, or merely part of the compensation package as a whole, is not clear from the statutory scheme. However, there is no indication that it intended the term to include incidental substantive legal rights, such as the right to bring an action against third parties.

Moreover, such an interpretation of the term "benefits" and resulting extraterritorial application of the Utah rule on actions

against third parties would stretch the purpose and intent of workers' compensation, which attempts to expeditiously compensate an injured worker without recourse to litigation. *See, e.g., Lantz v. National Semiconductor Corp.,* 775 P.2d 937, 938 (Utah App. 1989) (indicating purpose of workers' compensation system "is to provide speedy and certain compensation for [workers] and their dependents and to avoid the delay, expense and uncertainty" that so often accompanies litigation) (quoting *Adamson v. Okland Constr. Co.,* 508 P.2d 805, 807 (1973)). While Utah furthers this policy by continuing to require coverage for Utah employees temporarily working out of state, the same policy does not justify the extraterritorial imposition of Utah's third-party rule on defendants with little or no connection to Utah.

■ Accordingly, we conclude that the right of a Utah worker, temporarily out-of-state, to claim workers' compensation benefits in Utah does not include the right to bring an action against all potentially liable third parties under section 35–1–62. Thus, section 35–1–62 does not have automatic extraterritorial effect.

### C. Choice of Law

■ Such a conclusion does not, however, necessarily preclude application of the Utah third-party rule to Utah defendants allegedly involved in the injury of a Utah worker who is temporarily out-of-state. There is still a question of which state's law applies under traditional choice of law analysis. Since Utah is the forum state, Utah's choice of law rules determine the outcome of the conflict. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 495–96, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

■ Layton and Steel Deck point out that Utah has traditionally employed the *lex loci delicti* rule to determine the substantive law applicable in tort cases. *See Velasquez v. Greyhound Lines, Inc.,* 12 Utah 2d 379, 366 P.2d 989, 991 (1961), *overruled on other grounds by Harris v. Utah Transit Auth.,* 671 P.2d 217 (Utah 1983); *Bodrug v. United States,* 832 F.2d 136, 137 (10th Cir.1987). Under the *lex loci* approach, the forum court mechanically applies the substantive law of

the place where the harm occurred, which in this case would be Nevada since that is where Shaw sustained his injury. *See Bodrug,* 832 F.2d at 137.

■ Whatever may be said of the continued vitality of the *lex loci* approach in tort cases generally, we can only conclude that a different analysis is required in the area of workers' compensation. As noted by the Wyoming Supreme Court, "[o]riginally, when worker's compensation laws were first passed, many courts applied tort conflict principles and lex loci delicti." *Wessel v. Mapco, Inc.,* 752 P.2d 1363, 1364 (Wyo.1988). The Wyoming court went on to state that "currently it is recognized worker's compensation law-conflict issues present unique policy questions since the process is neither tort nor contract, but a statutory hybrid, so the traditional conflict theories are inept." *Id.* at 1364–65.

The Connecticut Supreme Court also recognized the limitations of the *lex loci* approach to workers' compensation conflicts in *Simaitis v. Flood,* 437 A.2d 828 (Conn.1980). According to that court, "the place-of-the-injury rule affords only an unsatisfactory resolution to the workers' compensation choice of laws problem." *Id.* at 831. The court pointed out that, ironically, employing such an approach "would bestow upon temporary visitors injured in Connecticut all the relief which the Connecticut compensation act affords, but deny that same relief to Connecticut residents injured while on temporary business outside the state, even when all other incidents of employment, such as in this case, are in Connecticut." *Id.* Accordingly, the court concluded that the proper choice of law approach is to employ "the rules traditionally applied to workers' compensation conflicts cases," rather than the tort rule of *lex loci. Id.* at 832.

■ There are three approaches commonly employed to resolve choice of law problems in contemporary workers' compensation cases. Such approaches are: (1) application of the law of the place of the employment relation; (2) an interest analysis, which seeks to determine which state has the greatest interest in having its law applied; or (3) a

hybrid of the first two approaches which focuses on the relationship of the parties, their expectations, and the interests of the states whose law might be applied. *See id.* at 832–33 (employing all three approaches); *Quiles v. Heflin Steel Supply Co.*, 145 Ariz. 73, 77, 699 P.2d 1304, 1308 (App.1985) (applying law of state where compensation was sought and all parties resided); *Saharceski v. Marcure*, 373 Mass. 304, 366 N.E.2d 1245, 1248–49 (1977) (using hybrid approach); *Braxton v. Anco Elec., Inc.*, 100 N.C.App. 635, 397 S.E.2d 640, 643 (1990) (holding forum state's interests and public policy require application of its law where all parties are citizens of forum state and employment relation was created there), *aff'd*, 330 N.C. 124, 409 S.E.2d 914 (1991); 4 Arthur Larson, *The Law of Workmen's Compensation* § 87.40 at 16–114 (1993) (concluding state has controlling interest when it is the place of employment relation).

Of the three approaches, Shaw argues that we should exclusively employ the place of employment test. In doing so we would automatically apply Utah law because Shaw was initially hired in Utah and applied for and received workers' compensation benefits here. However, while easily applied, such an approach would unfairly impose Utah workers' compensation law on out-of-state parties whose only connection with the state is that they worked, quite by coincidence, on the same project with a worker initially employed in Utah. This simply will not do.

The interest analysis approach also disregards important considerations. Were we to adopt this approach, looking only to each state's interest in the conflict, we would be ignoring the parties' relationship and their reasonable expectations regarding the applicable law. Thus, interest analysis, while somewhat more flexible, is not entirely satisfactory.

In contrast, the hybrid approach preserves Utah's interests and public policy concerns, while at the same time accommodating the intent and expectations of the various parties. As such, it combines the best elements of both interest analysis and the place of employment approach. Since the hybrid approach appears the most reasonable and accommodating of the various considerations involved, we adopt it.

In applying the hybrid approach, we look first to each state's interest and then to the reasonable expectations of the parties. *Saharceski*, 366 N.E.2d at 1249. Utah has a declared interest in enabling its resident workers to bring a negligence action against other responsible parties in addition to obtaining workers' compensation benefits from their employers. *See* Utah Code Ann. § 35–1–62 (1988); *Pate v. Marathon Steel Co.*, 777 P.2d 428, 429–31 (Utah 1989). Shaw is a resident of Utah, who was temporarily working in neighboring Nevada as a result of a subcontract between his Utah employer and another Utah company. Utah clearly has an significant interest in seeing its law applied to Shaw's case. *See Simaitis*, 437 A.2d at 832 (significant state interest where parties reside in state, employer is state corporation, and employee was hired in state).

Nevada, on the other hand, does not have a significant interest in having its workers' compensation law applied so as to protect Utah entities from litigation brought by an injured Utah resident who received workers' compensation benefits pursuant to Utah law and under the auspices of the Utah Industrial Commission. While Nevada law does not authorize Nevada workers to file lawsuits against co-employees, including other subcontractors, or statutory employers, such as general contractors, *see* Nev.Rev.Stat. § 616.560 (1992), Nevada has no legitimate interest in abrogating that right when accorded by Utah to its residents temporarily working in Nevada for Utah employers. Although, as Layton and Steel Deck point out, Nevada was the place of the injury and the site of the construction project, the natural focus of state workers' compensation law is on the injured worker and his or her employer, not the geographical location of the worksite or injury. *See Braxton*, 397 S.E.2d at 643. Shaw is not a resident of Nevada, neither Layton nor Steel Deck are Nevada companies, and their "employment" relationships with one another and with Shaw were not established in Nevada. As a result, Nevada does not have any interest in seeing its

workers' compensation law applied to determine the rights of three non-resident parties.

The application of Utah law must also have been within the reasonable expectation of the parties to this action. Utah was the location of Layton's and Steel Deck's businesses and the state of their incorporation, the place of Shaw's initial hiring, and the state where the subcontracts were entered into. " '[W]hen all the parties reside and make their employment and [contractual] arrangements in a certain place, they have it in contemplation that the law of that place shall govern their relationships.' " *Braxton*, 397 S.E.2d at 643 (quoting *Home Indemnity Co. v. Poladian*, 270 F.2d 156, 159 (4th Cir.1959)). Accordingly, Shaw, Layton, and Steel Deck would reasonably expect Utah workers' compensation law to apply to any employment-related injuries sustained by Shaw.

In sum, we hold that Utah workers' compensation law applies to the Utah parties in this case, and, therefore, that Shaw is entitled to maintain his negligence claims against Layton and Steel Deck.[2]

## CONCLUSION

The trial court erred in determining that Nevada workers' compensation law was controlling in this case and that Shaw was therefore precluded from suing defendants Layton Construction and Steel Deck. As a result of Utah's significant interest in the outcome of this conflict and the reasonable expectations of the parties, Shaw is entitled to press his injury claims against other potentially liable Utah parties, consistent with Utah workers' compensation law. Accordingly, we reverse and remand the case for trial or other proceedings consistent with this opinion.

GREENWOOD and JACKSON, JJ., concur.

2. The separate question of which state's substantive negligence law applies to the parties' dispute is not before us. Nor do we express any opinion on the availability of any action against, or whether a different result would ensue, if Shaw sought to join his Nevada "co-employees" in this action.