**Clifford Allen LITTLEFIELD, Plaintiff,**

v.

**MOBIL EXPLORATION AND PRODUCING, NORTH AMERICA, INC., a corporation; Mobil Exploration & Producing U.S., Inc., a corporation, Defendants.**

No. 94–C–1078–S.

United States District Court,
D. Utah,
Central Division.

March 26, 1996.

---

Peter C. Collins, Bugden, Collins & Morton, Salt Lake City, UT, Bethia Beale Crane, Alex C. Tejada, Douglas R. Ware, Crane and Tejada, Durango, CO, for Plaintiff.

Tim Dalton Dunn, Kevin D. Swenson, Dunn & Dunn, Salt Lake City, UT, Alan Epstein, Chris A. Mattison, Thomas R. Dolven, Kenneth H. Lyman, Hall & Evans, Denver, CO, for Defendants.

## MEMORANDUM DECISION

SAM, Chief Judge.

### I. *INTRODUCTION*

The court has before it the motion for summary judgment of defendants Mobil Exploration and Producing, North America, Inc., ("MEPNA") and Mobil Exploration & Producing U.S., Inc. ("MEPUS"). By their

motion, defendants seek the court's judgment that as a matter of law the State of Colorado's workers' compensation statutes apply in determining the rights of plaintiff to file a tort liability claim against defendants and, that under Colorado law, plaintiff cannot recover against defendants because of the exclusive remedy provision of Colorado's workers' compensation laws.

The full facts of this matter, set forth in the pleadings, will not be repeated here. In brief, plaintiff, a Colorado resident, was injured in an oil well fire occurring June 13, 1991, on Navajo Tribal land near Montezuma Creek, Utah. Plaintiff was employed by Pool Company which was working to convert the well to a carbon dioxide injection well. The well site had been leased from the Navajo Tribe by defendant MEPNA, which owns leasehold interests and exploration well improvements to land in Colorado, Utah, and many other states. MEPNA and MEPUS are wholly owned subsidiaries of Mobil Corporation. MEPNA is a Nevada corporation; MEPUS is a Delaware corporation. In 1987, MEPNA contracted with MEPUS for MEPUS to perform all of MEPNA's management, operations, staffing, communications, and other services related to the operation of MEPNA's properties and business. MEPUS, which is in the oil and gas exploration and producing business, "as agent for" MEPNA, contracted with Navajo West, Inc. ("NWI"), a minority owned Navajo enterprise which is involved with oil well service work, for oil well conversion work. NWI, in turn, contracted out the oil well conversion work to plaintiff's employer Pool Company.

MEPUS required that the contractor performing the well servicing work obtain workers compensation coverage for its employees. Pool Company agreed to this term and provided workers' compensation cover-age for its employees, including plaintiff. After the accident, plaintiff received workers' compensation benefits under the auspices of the Colorado Division of Labor, Workers Compensation Section.

Plaintiff has alleged claims against defendants based on theories of negligence and vicarious liability.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. See 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727 (2d ed.1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[2] Id., 477

---

1. Whether a fact is material is determined by looking to relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

2. In his dissent in Celotex, Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy

U.S. at 323, 106 S.Ct. at 2552. "[T]here can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict ....

*Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id.*, 477 U.S. 242, 106 S.Ct. 2505.

## III. *DISCUSSION*

A. Whether Utah's or Colorado's workers' compensation law governs this action?

■ In a diversity case a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 495–96, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Tucker v. R.A. Hanson Co., Inc.*, 956 F.2d 215 (10th Cir. 1992). Because Utah is the forum state, its choice of law rules apply to determine the choice of law issues arising from defendants' motion. "The initial step in resolving the choice of law question is to determine whether a conflict exists between the law of the interested states." *Snyder v. Celsius Energy Co.*, 866 F.Supp. 1349, 1353 (D.Utah 1994). The court is satisfied that such a conflict exists in the present case. *See Id.* n. 9 ("the tests employed by Colorado ... [and] Utah to determine who may avail themselves of tort immunity as a 'statutory employer' each differ from the other. Moreover, status as an employer does not automatically ensure immunity from tort liability under Utah law.")

■ The parties acknowledge that the Utah Supreme Court has not addressed the choice of law issue before this court. Therefore, the court must predict how the Utah Supreme Court would rule if faced with the same facts and issues. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406 (10th Cir.1988). In doing so, the "federal court should consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Id.* at 407.

The Utah Court of Appeals, directly addressing the issue presented, has applied a "hybrid" approach in resolving choice of law problems in workers compensation claims. *Shaw v. Layton Construction Company, Inc.*, 872 P.2d 1059 (Utah App.1994), *cert. denied*, 883 P.2d 1359 (Utah 1994). That approach "focuses on the relationship of the parties, their expectations, and the interests of the states whose law might be applied." *Id.* at 1064. Under the *Shaw* test, the court looks "first to each state's interest and then to the reasonable expectations of the parties." *Id.* The court predicts the Utah Supreme Court would apply the law as outlined in *Shaw*.

---

of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

## State Interest

Under the *Shaw* analysis, the court examines the interest of both Utah and Colorado in having its law applied. It is undisputed that "Utah has a declared interest in enabling its resident workers to bring a negligence action against other responsible parties in addition to obtaining workers' compensation benefits from their employers." *Id.*

Here, however, plaintiff is a resident of Colorado which also has a declared interest in having its residents temporarily working out of state recover workers compensation benefits according to its workers' compensation law. *See* Colo.Rev.Stat. § 8–41–204.[3] Colorado also has a statutory scheme which prevents injured workers from suing "statutory employers". Colo.Rev.Stat. § 8–41–401. Under Colorado law general contractors are ultimately responsible for workers' compensation benefits for injuries to employees of sub-contractors. Colo.Rev.Stat. § 8–41–401(1); *Finlay v. Storage Technology Corp,* 764 P.2d 62, 64 (Colo.1988). The legislative purpose is to prevent employers from avoiding responsibility under the Workers' Compensation Act by contracting out work to uninsured independent contractors. *Id.* If a sub-contractor has obtained workers compensation insurance, its employees cannot reach "upstream" to other contractors. Colo.Rev. Stat. § 8–41–401(2); *Buzard v. Super Walls, Inc.,* 681 P.2d 520 (Colo.1984). Thus, Colorado has a significant interest in applying its workers compensation laws to this case.

Conversely, Utah does not have a significant interest in having its law applied so as to protect foreign entities or nonresident plaintiffs who received worker's compensation benefits pursuant to Colorado law. Additionally, "the natural focus of state workers' compensation law is on the injured worker and his or her employer, not the geographical location of the work site or injury." *Shaw,* 872 P.2d at 1064. Plaintiff

is not a resident of Utah, the defendants are not Utah corporations, none of the employment contracts between the parties were established in Utah and plaintiff did not apply for or receive workers' compensation benefits under Utah law. It is undisputed that plaintiff was hired in Colorado at Pool's Cortez, Colorado office. Because plaintiff was hired in Colorado, defendants were obligated to provide Colorado workers compensation coverage. Plaintiff applied for and received workers compensation benefits under Colorado law. Finally, preservation of Colorado's quid pro quo statutory scheme (expanded workers' compensation liability in exchange for expanded tort immunity) does not offend Utah's public policy. *Snyder v. Celsius Energy Co.,* 866 F.Supp. 1349, 1358 (D.Utah 1994).

## Expectation of the parties

The court must also look to the reasonable expectations of the parties as to which law would apply. *Shaw,* 872 P.2d at 1065. The *Shaw* court examined:(1) the location of defendants' businesses; (2) the state of defendants' incorporation; (3) the place of plaintiff's hiring; and, (4) the state where the subcontracts were entered into. *Id.* The MEPNA/MEPUS–NWI contract was entered into between MEPUS' Denver, Colorado office and NWI's Shiprock, New Mexico office. Defendants knew, when contracting with NWI, that Pool Company would perform the work. This was an accommodation to satisfy Navajo requirements for operating wells on Navajo land. The NWI–Pool agreement was executed between NWI's Shiprock, New Mexico office and Pool's Houston, Texas office. Pool Company had no office located in Utah. Plaintiff's place of initial hiring was Colorado. Plaintiff was a Colorado resident. Most of plaintiff's work days began in Colorado, often stopping at Pool's Cortez, Colorado yard to pick up supplies. Afterward, plaintiff and his coworkers would drive to the

477 U.S. at 332, 106 S.Ct. at 2557 (citations omitted).

**3.** Colo.Rev.Stat. § 8–41–204 provides:

If an employee who has been hired or is regularly employed in this state receives personal injuries in an accident or an occupational disease arising out of and in the course of such employment outside of this state, the employee

... shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six months after leaving this state, unless, prior to the expiration of such six-month period, the employer has filed with the division notice that the employer has elected to extend such coverage for a greater period of time.

various well sites, including the Utah site where the accident occurred. Given the foregoing facts, it is more reasonable to assume, that between Colorado law and Utah law, plaintiff, as well as defendants, would expect Colorado law to apply. The court further finds it persuasive that plaintiff elected his workers' compensation benefits under Colorado law. He did not file a workers' compensation claim in Utah. His actions reflect the expectation that Colorado's workers' compensation law would apply. On balance, the court concludes that the reasonable expectation of the parties, especially plaintiff, was that Colorado law would apply.

*Snyder v. Celsius*

Defendants also suggest that in deciding the choice of law issue the court should consider the pre *Shaw* decision of Judge Jenkins in *Snyder v. Celsius*, 866 F.Supp. 1349 (D.Utah 1994) and the cases cited therein. The court there concluded that a Utah court would apply the Restatement (Second) of Conflicts of Laws § 184 to a choice of law dispute in a workers' compensation context. Applying that analytical framework to the facts of this case, the court's conclusion, that Colorado law applies, remains unchanged.

B. Whether MEPNA and MEPUS are immune from suit?

1. Whether MEPNA is immune from suit under Colo.Rev.Stat. § 8–41–402[4] as an owner of real property or improvements and, therefore, entitled to statutory employer status?

■ As noted, Colorado has a workers' compensation scheme which prevents injured workers from suing statutory employers.

Colo.Rev.Stat. § 8–41–402(1) provides that, if a corporation "owning any real property or improvements thereon" contracts out work to be performed on the property, the corporation is deemed to be an "employer". Pursuant to § 8–41–402(2), if the contractor obtains worker's compensation insurance, the property owner is immune from suit.

MEPNA claims that, under § 8–41–402, it is a statutory property owner immune from plaintiff's suit because it held a leasehold interest in the well site where the accident occurred and because plaintiff's employer, Pool Company, obtained applicable workers' compensation coverage. Plaintiff counters that MEPNA is exempt from statutory employer protection by virtue of Colo.Rev.Stat. § 8–41–403(1), which provides that a lessor or sublessor of real property shall not be held to be a statutory employer if it "rents or leases real property to any lessee or sublessee for the purpose of conducting the business of such lessee or sublessee . . . ." Plaintiff asserts that MEPNA, by its execution of the 1987 Service Agreement with MEPUS, effectively subleased the property to MEPUS for use in MEPUS' business. MEPNA maintains that plaintiff's position is flawed because it did not receive any consideration from MEPUS and therefore the elements of a lease are not present.

■ The parties do not dispute that the requisite elements of a lease under Colorado law are that the agreement needs to be definite as to the property involved, the term, the consideration to be paid, and the time and manner of payment. *Carlson v. Bain*, 116 Colo. 526, 182 P.2d 909, 911 (1947). Plaintiff maintains that each of these ele-

---

4. Colo.Rev.Stat. § 8–41–402 provides in pertinent part as follows:

(1) Every person, company, or corporation owning any real property or improvements thereon and contacting out any work done on and to said property to any contractor, subcontractor . . . shall be deemed to be an employer under the terms of articles 40 to 47 of this title. Every such contractor, subcontractor, . . . as well as such contractor's, subcontractor's . . . employees, shall be deemed to be an employee, and such employer shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said contractor, subcontractor, . . . and said employees or employees' dependents and, before commencing said work, shall insure and keep insured all liability as provided in said articles. . . .

(2) If said contractor, subcontractor . . . is also an employer in the doing of such work and, before commencing such work, insures and keeps insured all liability for compensation as provided in articles 40 to 47 of this title, neither said contractor, subcontractor or person nor any employees or insurers thereof shall have any right of contribution or action of any kind, . . . against the person, company, or corporation owning real property and improvements thereon which contracts out work done on said property, or against its employees, servants, or agents.

ments is present in the 1987 Service Agreement between MEPNA and MEPUS. After reviewing the 1988 Service Agreement, the court agrees with defendants that "MEPUS was no more a 'lessee' for MEPNA than a property manager hired to operate a building would be a 'lessee' for the building owner." Defendants' Reply Memorandum, p. 18. The 1987 Service Agreement expressly provides that MEPNA is to pay MEPUS appropriate consideration for MEPUS' services in managing and operating MEPNA's property. Plaintiff's reliance on assertions by MEPNA in other litigation, that it is simply an asset holding company, that it has never had any employees, and that possession and control of the Aneth Oil Field rested in MEPUS does not, in the court's opinion, put in dispute whether MEPNA leased the well site to MEPUS for purposes of Colo.Rev.Stat. § 8–41–403(1). When the material facts are undisputed, the question of whether an entity is a statutory employer becomes a question of law for the court. *University of Colorado Medical Center v. Industrial Comm'n. of Colorado,* 622 P.2d 596, 597 (Colo.App.1980). MEPNA is, therefore, entitled to summary judgment on the issue of statutory employer status under Colo.Rev.Stat. § 8–41–402.

2. Whether MEPUS and MEPNA are statutory employers immune from suit by virtue of Colo.Rev.Stat. § 8–41–401?

MEPNA and MEPUS both assert that they are immune from plaintiff's suit because they were statutory employers of his under Colo.Rev.Stat. § 8–41–401, which provides in pertinent part as follows:

(1) Any persons, company, or corporation ... contracting out any part or all of the work thereof to any ... contractor, or subcontractor ... shall be construed to be an employer as defined in articles 40 to 47 of this title and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said ... contractors, and subcontractors and their employees or employee's dependents ....

(2) If said ... contractor, or subcontractor is also an employer in the doing of such work and, before commencing such work, insures and keeps insured its liability for compensation as provided in articles 40–47

of this title, neither said ... contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind ... against the person, company, or corporation ... contracting out any part or all of the work thereof ....

■ "[T]he test for whether an alleged employer is a 'statutory employer' ... is whether the work contracted out is part of the employer's 'regular business' as defined by its total business operation.... [C]ourts should consider ... routineness, regularity, and the importance of the contracted service to the regular business of the employer." *Finlay,* 764 P.2d at 67. The "importance [of the disputed service] can be demonstrated by showing that in the absence of a subcontractor's services, the contractor would find it necessary to accomplish the work by use of the contractor's own employees rather than to forego the performance of the work." *Finlay, Id.* (citing *Pioneer Construction Co. v. Davis,* 152 Colo. 121, 381 P.2d 22 (1963)). Nevertheless, " '[t]he issue of whether an employer would ordinarily accomplish the work with his own employees is simply a corollary to the inquiry "is the work performed part of the employer's regular business," and is not to be determined solely by proof of the employment practices of similar business.' " *Finlay, Id.* (quoting *Melody Homes, Inc. v. Lay,* 44 Colo.App. 49, 610 P.2d 1081, 1082 (1980)).

■ Defendants state that MEPNA retained MEPUS to perform all of the well producing activities on MEPNA's wells. MEPUS asserts that its total business operation involved well servicing and maintenance work and, if it had not contracted out the work to NWI, who contracted out the work to Pool, MEPUS would have had to accomplish the well servicing work with its own employees.

Plaintiff contends that MEPNA has no employees, performs no oil production function in the Aneth oil field, and its sole function in the Aneth oil field is to own the leasehold interest and, therefore, it has not contracted out its regular business to MEPUS. Section 8–41–104 applies only if the work contracted out is part of the "regular

business" of the alleged "employer". Plaintiff has put into dispute whether the work contracted out by MEPNA/MEPUS is part of the regular work contracted out by MEPNA. The court is satisfied that disputed issues of material fact exist as to whether the work contracted out by MEPNA was part of its regular business, thus, precluding summary judgment on this issue.

As to MEPUS, plaintiff urges that he was injured in the course of work which was not contracted out by MEPUS in a manner meeting the requirements of § 8–41–401. Specifically, plaintiff contends that conversion of a production well to a water and gas injection well accomplished by the injection of carbon dioxide, usually occurs only once in a well's lifetime, and is specialized work not a routine part of work for MEPUS and MEPNA. Plaintiff has submitted opinion evidence that MEPUS did not appear to have the equipment or personnel to perform well conversion work. Additionally, plaintiff points to the MEPUS/NWI contract (Mobil Contract No. EPDD 89–069T) which defines the well conversion work as nonroutine maintenance.

The contested issue as to MEPUS is whether the well conversion work performed by Pool Company is part of MEPUS's regular business. It is undisputed that MEPUS is in the business of exploring for, producing, processing, transporting, purchasing and selling crude oil, natural gas and other hydrocarbons and minerals. MEPUS submits that "petroleum well service work was part of the total petroleum exploration and producing business of MEPNA and MEPUS. If MEPUS ... had not contracted out the ... well service work ... MEPUS would have had to, out of necessity, hire or use [its] own employees to perform the well service work." Aff. of Jack Wilhelm, ¶ 9. In view of the "total business operation" of MEPUS, it cannot reasonably be said that conversion of a well to produce oil or gas by one means as compared to another is outside MEPUS' regular business of oil and gas production. *Cf. Black v. Cabot Petroleum Corp.*, 877 F.2d 822 (10th Cir.1989)(Under Colorado law, plugging and capping of oil well by subcontractor was part of regular business operation of oil drilling company); *Finlay v. Storage Technology Corp.*, 764 P.2d 62 (Colo.1988)(cleaning of

premises by janitorial service company was part of total business operation of computer equipment company); *Melody Homes, Inc. v. Lay*, 44 Colo.App. 49, 610 P.2d 1081 (1980)(hiring of security firm to patrol construction site was part of regular business of builder). The record reflects that the well conversion work is of such importance that, but for Pool Company's services, MEPUS would of necessity found these services by other means, including training its own employees. Plaintiff has not disputed this assertion and the court finds that there is no dispute as to the material facts on this issue. Accordingly, the court concludes that MEPUS is entitled to summary judgment that it is a statutory employer, immune from plaintiff's claims.

## IV. CONCLUSION

For the reasons stated, defendants' motion for summary judgment is GRANTED, except MEPNA's motion for immunity pursuant to Colo.Rev.Stat. § 8–41–401.