**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLIFFORD ALLEN LITTLEFIELD,

    Plaintiff-Appellant,

v.

MOBIL EXPLORATION AND
PRODUCING, NORTH AMERICA,
INC., a corporation; MOBIL
EXPLORATION & PRODUCING U.S.,
INC., a corporation,

    Defendants-Appellees.

No. 96-4127
(D.C. No. 94-CV-1078-S)
(Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, Circuit Judge, **KELLY**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

---

    The first issue to be resolved in this diversity negligence case is whether Colorado

or Utah workers' compensation law applies. The district court held that Colorado law

applies. We agree.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

By amended complaint, Clifford Allen Littlefield ("Littlefield"), a resident and citizen of the State of Colorado, brought suit in the United States District Court for the District of Utah against Mobil Exploration and Producing, North America, Inc., ("MEPNA"); Mobil Exploration & Producing, U.S., Inc., ("MEPUS"); and Navajo West, Inc. ("NWI"). Jurisdiction was based on 28 U.S.C. § 1332(a). It was alleged in the amended complaint that on June 13, 1991, Littlefield, while in the employ of Pool Company ("Pool"), was working in the Aneth oil field in San Juan County, State of Utah, which is located on Navajo Indian land, and that while thus working a flash fire occurred which caused him severe injuries.

As stated, there were three named defendants in the amended complaint, namely MEPNA, MEPUS, and NWI.[1] In that complaint Littlefield alleged that MEPNA was the lessee of the real property on which Littlefield suffered his injuries and further that at the time of the accident MEPNA "was in a contractual relationship with defendant MEPUS regarding the performance, by defendant MEPUS, of certain services on that real property, including the services . . . which defendant MEPUS was engaged at the time of and in connection with the subject incident." We are further advised in the amended

---

[1]MEPNA is a Nevada corporation authorized to acquire and own leasehold interests in land and to conduct oil and gas exploration thereon in many states, including Colorado and Utah. MEPUS is a Delaware corporation authorized to conduct oil and gas exploration in many states, including Colorado and Utah. MEPNA and MEPUS are both wholly owned subsidiaries of Mobil Corporation. NWI is a Navajo-owned New Mexico corporation with its principal place of business in Shiprock, New Mexico and a local Colorado office in Cortez, Colorado.

2

complaint that MEPUS employed, supervised and trained all "Mobil" workers who, as of the date of the accident, worked on a regular basis at the Aneth oil field.

The amended complaint went on to state that MEPUS was also in a "contractual relationship" with NWI regarding the performance by NWI of certain services on the subject real estate, and that NWI, in turn, entered into a contract with Pool whereby Pool would perform the services which NWI had contracted to perform for MEPUS. It was in connection with the services being rendered by Pool under its contract with NWI that Littlefield, an employee of Pool, was injured.

As concerns the defendant, MEPNA, Littlefield asserted a claim based on MEPNA's "direct negligence" and a second based on MEPNA's "vicarious liability for the negligence of defendant MEPUS." As concerns the second defendant, MEPUS, Littlefield asserted a claim based on MEPUS' "direct negligence" and a second claim based on MEPUS' "vicarious liability for the negligence of defendant NWI." Littlefield also asserted a third claim against MEPUS based on the "vicarious liability for negligence, if any, of Pool." As concerned the third defendant, NWI, Littlefield asserted a claim based on NWI's "direct negligence" and a second claim based on NWI's "vicarious liability for the negligence, if any, of Pool." The amended complaint concluded by praying for judgment against the three defendants in an unspecified amount in excess of $200,000, plus interest and costs.

MEPNA and MEPUS filed an answer to the amended complaint, and later, after discovery, filed a motion for summary judgment.[2] The district court granted the defendants' motion for summary judgment and entered judgment in favor of them and against Littlefield on the ground that both entities were "statutorily immune" from Littlefield's negligence claims. Littlefield appeals.

On appeal, Littlefield urges two matters: (1) the district court erred in holding that Colorado workers' compensation law applied to the facts of this case, and that the district court should have held that Utah workers' compensation law applied; and (2) even assuming that Colorado workers' compensation law applies, the district court erred in holding that under Colorado workers' compensation law MEPNA and MEPUS were "statutory employers" of Littlefield and immune from tort liability to Littlefield.

The root of this controversy is that, under Utah law, MEPNA and MEPUS, though statutory employers, are not immune from suit by Littlefield, whereas under Colorado law MEPNA and MEPUS, if they qualify as statutory employers, are immune from such suit. It is agreed that if Utah law applies the district court's judgment should be reversed. So, the first issue to be resolved is whether the district court erred in holding that Colorado law, and not Utah law, applies.

---

[2]NWI filed a motion to dismiss on the grounds of comity, which was granted on July 2, 1996. Littlefield does not appeal that order and NWI is not a party to this appeal.

Since Utah is the forum state, Littlefield having filed his action in the United States District Court for the District of Utah, Utah's choice of law rules are determinative of the question of whether Utah or Colorado law applies. In other words, in a diversity case a federal court must apply the choice of law rules of the forum state. *Klaxon v. Stanton Electric Mfg.,* 313 U.S. 487, 496 (1941); *Tucker v. R. A. Hanson Co., Inc.,* 956 F.2d 215, 217 (10th Cir. 1992).

On the issue of whether Utah or Colorado workers' compensation law governs, all parties rely on *Shaw v. Layton Construction Company,* 872 P.2d 1059 (Utah Ct. App.) *cert. denied* 883 P.2d 1359 (Utah 1994).[3] Littlefield argues that under *Shaw* Utah law governs, whereas the defendants argue that under *Shaw,* Colorado law governs. *Shaw* obviously deserves close scrutiny.

Shaw, a resident of Utah, was injured when he fell through a hole in a roof while working on the construction of a state prison in Ely, Nevada. Shaw was employed by Harv & Higham Masonry, a Utah corporation, which was a subcontractor on the Nevada prison project. Layton Construction, a Utah corporation, was the general contractor on the Nevada project. Layton subcontracted with Harv & Higham in Salt Lake City for the

---

[3]The parties agree that the Utah Supreme Court has not spoken on the choice of law issue here presented, although, as noted, it did deny certiorari in *Shaw.* In such circumstances a "federal court should consider state court decisions, decisions of other states, federal decisions and the general weight and trend of authority." *Armijo v. Ex. Cam. Inc.,* 843 F.2d 406, 407 (10th Cir. 1988).

masonry work on the project. At the same time, Layton had subcontracted with Steel Deck Erectors, another Utah corporation, to perform all steel framing and decking work.

Subsequent to his injury, Shaw applied for, and received, workers' compensation benefits in Utah from his employer, Harv & Higham. He thereafter filed an action in the district court for Salt Lake County, Utah against both Layton and Steel Deck, alleging that their negligence contributed to his injuries. Layton moved to dismiss and Steel Deck moved for summary judgment. Both claimed that Nevada, rather than Utah, workers' compensation law applied, and that, under Nevada law, Shaw was precluded from suing them for negligence. The district court for Salt Lake County granted those motions, employing the *lex loci delicti* choice of law approach, and held that Nevada law applied because the injury occurred in that state. The district court then held that under Nevada law, Layton and Steel Deck were immune from suit. Shaw appealed and on appeal the Utah Court of Appeals reversed. The Utah Supreme Court denied certiorari.

In reversing, the Utah Court of Appeals first noted that although under Utah law Shaw was precluded from suing his employer, Harv & Higham, he was entitled to bring an action for damages against "other parties" allegedly responsible for his work related injuries, including Layton and Steel Deck. The Utah Court of Appeals also observed that although under Nevada law a negligence action could, under certain circumstances, be brought against "other persons," such could not be brought against Layton, which under

6

Nevada law was deemed to be Shaw's "employer," or against Steel Deck, which, under Nevada law, was deemed to be a "co-employee."

In *Shaw*, the Utah Court of Appeals rejected the suggestion that there should be "extra-territorial effect" given the Utah statute. However, such, according to that court, did not necessarily preclude application of the Utah law, and the court opined that under the "traditional choice of law analyses" there remained the question of whether Utah or Nevada law applied. In addressing that question, the Utah Court of Appeals specifically declined to apply the *lex loci delicti* approach to workers' compensation cases. In this connection the Utah Court of Appeals stated that "[w]hatever may be said of the continued vitality of the *lex loci* approach in tort cases generally, we can only conclude that a different analysis is required in the area of workers' compensation." *Shaw*, 872 P.2d at 1063.

In determining whether Utah or Nevada law applied, the Utah Court of Appeals in *Shaw* then went on to speak as follows:

> There are three approaches commonly employed to resolve choice of law problems in contemporary workers' compensation cases. Such approaches are: (1) application of the law of the place of the employment relation; (2) an interest analysis, which seeks to determine which state has the greatest interest in having its law applied; or (3) a hybrid of the first two approaches which focuses on the relationship of the parties, their expectations, and the interests of the states whose law might be applied.

*Id.* at 1063-64.

7

The Utah Court of Appeals in *Shaw* then adopted the "hybrid approach." In so doing, it spoke as follows:

> In contrast, the hybrid approach preserves Utah's interests and public policy concerns, while at the same time accommodating the intent and expectations of the various parties. As such, it combines the best elements of both interest analysis and the place of employment approach. Since the hybrid approach appears the most reasonable and accommodating of the various considerations involved, we adopt it.

*Id.* at 1064.

In holding that Colorado law applied to the facts of our case, the district court noted that Littlefield was a citizen and resident of Colorado, and that neither MEPNA nor MEPUS was a Utah corporation. The district court stated that inasmuch as Littlefield was a resident of Colorado who had been hired in Cortez, Colorado by Pool, the State of Colorado had "a declared interest in having its residents temporarily working out of state recover compensation benefits according to its workers' compensation law," citing Colo. Rev. Stat. § 8-41-204 (1997).[4] The district court indicated that Utah, under the circumstances, did not have a "significant interest" in having its law applied to the facts of the instant case and in thus concluding spoke as follows:

---

[4]Colo. Rev. Stat . § 8-41-204 (1997) provides as follows.

If an employee who has been hired or is regularly employed in this state receives personal injuries in an accident or an occupational disease arising out of and in the course of such employment outside of the state, the employee . . . shall be entitled to compensation according to the law of this state.

Conversely, Utah does not have a significant interest in having its law applied so as to protect foreign entities or nonresident plaintiffs who received worker's compensation benefits pursuant to Colorado law. Additionally, "the natural focus of state workers' compensation law is on the injured worker and his or her employer, not the geographical location of the work site or injury." *Shaw*, 872 P.2d at 1064. Plaintiff is not a resident of Utah, the defendants are not Utah corporations, none of the employment contracts between the parties were established in Utah and plaintiff did not apply for or receive workers' compensation benefits under Utah law. It is undisputed that plaintiff was hired in Colorado at Pool's Cortez, Colorado office. Because plaintiff was hired in Colorado, defendants were obligated to provide Colorado workers compensation coverage. Plaintiff applied for and received workers compensation benefits under Colorado law. Finally, preservation of Colorado's quid pro quo statutory scheme (expanded workers' compensation liability in exchange for expanded tort immunity) does not offend Utah's public policy.

We are in general accord with the reasoning and the result reached by the district court. We agree that Colorado's interest in the application of its law is more "significant" than Utah's interest and that the reasonable expectations of the parties were that Colorado law would apply. None of the parties are Utah residents. Under *Shaw*, the fact that the accident occurred in Utah is not decisive. The district court did not err in concluding that under *Shaw* Colorado workers' compensation law applies, and not Utah law.

Alternatively, counsel argues that even assuming that Colorado law applies, neither MEPNA nor MEPUS is a statutory employer of Littlefield under Colo. Rev. Stat. § 8-41-401 (1997). Colo. Rev. Stat. § 8-41-401 (1997) provides as follows:

9

(1)(a) Any person, company or corporation  operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be an employer as defined in articles 40 to 47 of this title and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees or employees' dependents. . . .

(b) The employer, before commencing said work, shall insure and keep insured against all liability as provided in said articles, and such lessee, sublessee, contractor, or subcontractor, as well as any employee thereof, shall be deemed employees as defined in said articles.  The employer shall be entitled to recover the cost of such insurance from said lessee, sublessee, contractor, or subcontractor and may withhold and deduct the same from the contract price or any royalties or other money due, owing, or to become due said lessee, sublessee, contractor, or subcontractor.

(2) If said lessee, sublessee, contractor, or subcontractor is also an employer in the doing of such work and, before commencing such work, insures and keeps insured its liability for compensation as provided in articles 40 to 47 of this title, neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurers shall have any right of contribution or action of any kind, including actions under § 8-41-203, against the person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof, or against its employees, servants or agents. . . .

As concerns MEPNA, counsel for Littlefield argues that Colo. Rev. Stat. § 8-41-401(1997) is inapplicable because of Colo. Rev. Stat. § 8-41-403 (1997), which reads as follows:

§ 8-41-403.  Exemption of certain lessors of real property.

10

(1) The provisions of this part 4 shall not apply to any lessor or sublessor of real property who rents or leases real property to any lessee or sublessee for the purpose of conducting the business of such lessee or sublessee, whether as a franchise holder, independent agent, or consignee or in any other separate capacity and whether or not such person is an employer, as defined in section 8-40-203, but in no event where such lessee or sublessee is an employee, as defined in section 8-40-202.

(2) No such lessee or sublessee, or any employee or insurer thereof, shall have any right of contribution from or action against such lessor or sublessor under articles 40 to 47 of this title. . . . .                    (emphasis added)

As concerns MEPUS, counsel argues that MEPUS is not a statutory employer by virtue of its having contracted out to NWI the well conversion work because such work was not a part of the "regular business" of MEPUS as required by Colo. Rev. Stat. § 8-41-401 (1997).

Because of Littlefield's challenge to the district court's holding that under Colo. Rev. Stat. § 8-41-401(1) (1997) both MEPNA and MEPUS were statutory employers of Littlefield and therefore immune from tort liability, the relationship between the various parties to this controversy merits review.

MEPNA obtained a leasehold interest on Navajo Indian lands which authorized it to conduct oil and gas exploration, and the extraction of oil and gas from the leased land. MEPNA thereafter entered into a service agreement with MEPUS whereby the latter agreed to conduct the actual exploration and extraction. MEPUS later entered into a contract with NWI whereby the latter agreed to do certain service work at the well where

11

Littlefield sustained his injuries, namely, to convert the oil well to a carbon dioxide injection well. NWI, in turn, subcontracted the work which it had agreed to perform for MEPUS to Pool.

We agree with the district court that under Colo. Rev. Stat. § 8-41-401(1) (1997) MEPNA is a statutory employer of Littlefield and therefore is immune from tort liability to Littlefield under Colo. Rev. Stat. § 8-41-401(2) (1997). We, like the district court, reject the suggestion that MEPNA conveyed its leasehold interest to MEPUS, or subleased its interest to MEPUS, and therefore, under Colo. Rev. Stat. § 8-41-403(1) (1997), came within the exception to statutory immunity. The agreement between MEPNA and MEPUS was a service agreement and did not create a landlord-tenant relationship between MEPNA and MEPUS. In this connection, the present case is quite different from *Virginians Heritage Square v. Smith,* 808 P.2d 366 (Colo. Ct. App. 1991) (Unlike MEPNA's situation, Virginians leased real property for investment purposes only, and was not involved in the business of its lessees.).

Further, we agree with the district court that the "services" which NWI agreed to perform for MEPUS were not outside MEPUS' authorization from MEPNA to conduct oil and gas exploration, and extract oil and gas from the leased property. Littlefield's concept of what constitutes the "business," or "regular business," of MEPUS is too narrow. *See Finlay* vs. *Storage Technology Corporation,* 764 P.2d 62 (Colo. 1988) (Storage Tech was determined to be the statutory employer of a maintenance worker

12

employed by an independent contractor providing janitorial services where the services were such a regular part of Storage Tech's business that, absent the contractor's services, they would of necessity be provided by the business' own employees.).

In sum, we believe that the district court correctly understood, and applied, the applicable state law of both Utah and Colorado.[5]

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

---

[5]We reject Littlefield's rather belated request that we certify the choice of law question to the Utah Supreme Court and, depending on the outcome of that certification, certify, if necessary, the statutory employer issues to the Colorado Supreme Court. One who chooses to litigate his state action in the federal forum must ordinarily accept the federal court's reasonable interpretation of extant state law rather than seeking extensions via the certification process. *See Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d. 465, 472 (11th Cir. 1993); *Croteau v. Olin Corporation,* 884 F.2d. 45, 46 (1st Cir. 1989); *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir. 1988).